STATE OF CONNECTICUT *v.* BERNICE CUELLAR

SUPERIOR COURT      FAIRFIELD COUNTY      FILE No. 15598
AT BRIDGEPORT

STATE OF CONNECTICUT *v.* MARY EDWARDS

SUPERIOR COURT      FAIRFIELD COUNTY      FILE No. 15599
AT BRIDGEPORT

STATE OF CONNECTICUT *v.* WILLIE W. JONES

SUPERIOR COURT      FAIRFIELD COUNTY      FILE No. 15600
AT BRIDGEPORT

Memorandum filed February 28, 1964

Otto J. Saur, state's attorney, for the state.

Rubens, Saffo & Habansky, of Bridgeport, for defendant in each case.

MacDonald, J. The three named defendants, in accordance with the provisions of Public Acts 1963, No. 652, §§ 1-8 (General Statutes §§ 54-33a—54-33g) "An Act concerning Searches and Seizures," have filed similar motions to suppress for use as evidence against them certain "tangible things" seized by Greenwich police officers as a result of what is claimed to have been unreasonable search in violation of their rights under article first, § 8, of the Connecticut constitution, the fourth and fourteenth amendments to the United States constitution, and said Public Act No. 652. More specifically, it is claimed that the police officers searched the automobile of the defendant Bernice Cuellar without a search warrant and seized certain articles of clothing and other merchandise while the defendants were being detained at police headquarters on a minor motor vehicle charge against the defendant Willie Jones and that such search and seizure, admittedly made without a warrant, was neither incidental to an arrest for the commission of a felony nor made while acting on speedy information that a crime had been committed by the defendants or any of them.

Evidence introduced both in support of and in opposition to the motions indicates that on October

25, 1963, at about 4 p.m., two Greenwich police officers, Grant and Smith, acting at the time as special plainclothes detectives and patrolling in an unmarked police car on route 1 in the business district of Greenwich, became suspicious of the erratic operation of a motor vehicle bearing out-of-state markers and of the conduct of its three occupants; that after following the car for about five miles on a circuitous route through downtown Greenwich, they motioned the car to a stop, questioned the three defendants, who were its occupants, and found the defendant Jones, who was driving, to have no operator's license; that, since neither of the other defendants, the passengers, had an operator's license, Grant drove the car in question, with the defendants Cuellar and Edwards, to police headquarters, followed by Smith with the defendant Jones in the police car; that while operating the car in question, Grant observed a large zipper bag under the driver's side of the front seat, partially protruding in open view, but, of course, with contents undisclosed; that while the three defendants were inside police headquarters, where the defendant Jones was being booked for operating without a license, Grant removed and opened the zipper bag and found it to contain nine new pairs of women's ski slacks, clamped to metal hangers and still marked with white price tags; that he then proceeded to search the rest of the car, including the rear trunk, and found numerous new articles of clothing and other merchandise which he immediately took to his superiors, who, during the next hour or so, contacted various shop owners in neighboring towns, at least one of whom (who testified at the hearing) identified several hundred dollars' worth of the merchandise within an hour after he was contacted—and within about two hours after the arrest of Jones—as having been stolen from his ladies' specialty shop in

Westport; and that each of the three defendants was booked on four counts of larceny between one and two hours after the car was searched and the articles seized.

The sections of the federal and state constitutions cited in these motions guarantee all citizens security in their persons, houses, papers and effects against unreasonable searches and seizures, and limit searches of places of business and automobiles as well as dwelling houses. *Taylor* v. *United States*, 286 U.S. 1; *Carroll* v. *United States*, 267 U.S. 132. And they are to be construed liberally to safeguard the right of privacy. *Elkins* v. *United States*, 364 U.S. 206.

It is quite clear that upon the facts of this case the search of the car was made at least an hour before any one of the defendants was charged with the crime of larceny and that it was solely on the basis of the evidence uncovered by such search that the larceny charges were, in fact, made at all. Under such circumstances, the search cannot be justified as incidental to those particular arrests. *Rios* v. *United States*, 364 U.S. 253, 261; *United States* v. *Di Re*, 332 U.S. 581, 595; *State* v. *Fahy*, 149 Conn. 577, 586, rev'd on other grounds, 375 U.S. 85; *State* v. *DelVecchio*, 149 Conn. 567, 573. The circumstances did not warrant immediate seizure lest the criminals flee or the articles sought be transported out of reach before a warrant could be obtained. See *United States* v. *Jeffers*, 342 U.S. 48, 52; *Johnson* v. *United States*, 333 U.S. 10, 15. And the officers had ample opportunity to procure a search warrant. See *Johnson* v. *United States*, supra.

Here, it is argued by the state, the defendant Jones already was under arrest for a motor vehicle violation—operating without a license—and since

Grant presumably had entered the car for a legal purpose—namely, to drive it and two of the defendants to police headquarters, any contraband he thus spotted was subject to seizure. In support of this is cited the decision of this court in *State* v. *Brindley,* 25 Conn. Sup. 216, where a motion was denied to suppress the introduction into evidence of certain burglars' tools observed by an officer on the floor of a car which he had entered legally to check the operation of a windshield wiper claimed to be defective. This decision readily can be distinguished from the instant situation because there (1) the objects seized were in plain view; and (2) their mere presence in the car constituted the crime for which the accused was thereupon arrested—possession of burglars' tools under § 53-71 of the General Statutes.

If the original arrest here had been for the crime of larceny, there is little doubt that the officers would have had the right to search the driver and the entire automobile, but an arrest for a minor traffic violation may not be used as a pretext to search either the person or the car. *Taglavore* v. *United States,* 291 F.2d 262 (9th Cir. 1961). And most jurisdictions hold that the right to search a car turns on the right to arrest for the suspected felony rather than for the traffic violation. See *People* v. *Zeigler,* 358 Mich. 355; *People* v. *Gonzales,* 356 Mich. 247; *People* v. *Blodgett,* 46 Cal. 2d 114. In other words, "since the right to search incident to arrest is confined to the fruits, instrumentalities, or contraband connected with the crime, a necessary product of the crime would not be present in a typical minor traffic-infraction situation to allow a search." Barnette, "The Impact of *Mapp* v. *Ohio* upon the Connecticut Law of Search and Seizure," 37 Conn. B.J. 52, 81 (March, 1963); see *People* v. *Watkins,* 19 Ill. 2d 11.

Since the search of the contents of the closed bag and the subsequent search of the entire car were illegal, they were unreasonable and the evidence thus discovered and seized must be held inadmissible. *State* v. *Collins,* 150 Conn. 488, 492. Had the nine pairs of ski pants been exposed to the plain view of the officer when he legally entered the car, the results might well have been different. The following standards have been suggested for situations such as this in a helpful article by a New York judge:[1]

"1. On the street, in fixed premises or in an automobile, the police should be permitted to seize contraband in open view.

"2. Whenever in connection with a lawful original arrest, there is a right to search the person, unrelated contraband may reasonably be seized from the person of the arrestee. Since in an arrest for traffic violation there is no right to search the person, a 'search' (as distinguished from a seizure of contraband in open view) of the person or automobile should be 'unreasonable.'

"3. When a lawful arrest for any original crime is made on fixed premises or in an automobile, a seizure of unrelated contraband in open view only should be permitted. But if during a 'reasonable' original search of such fixed premises or automobile, unrelated hidden contraband is uncovered, the police should be required to obtain a search warrant and if necessary guard the premises or automobile until it is obtained.

"Such standards will not interfere with reasonable law enforcement and at the same time [will] protect the citizen on the highways and in his home."

---

[1] Sobel, A Comment on the Law of Search and Seizure, p. 77 (issued by the Kings County, N.Y., Criminal Bar Association).

Unfortunately, decisions such as this inevitably result in the frequent discharge of guilty individuals. However, we must recall the words of Mr. Justice Brandeis in his dissenting opinion in *Olmstead* v. *United States,* 277 U.S. 438, 485, where he states: "Decency, security and liberty alike demand that government officials shall be subjected to the same rules of conduct that are commands to the citizen. In a government of laws, existence of the government will be imperilled if it fails to observe the law scrupulously. Our Government is the potent, the omnipresent teacher. For good or for ill, it teaches the whole people by its example. Crime is contagious. If the Government becomes a lawbreaker, it breeds contempt for law; it invites every man to become a law unto himself; it invites anarchy. To declare that in the administration of the criminal law the end justifies the means—to declare that the Government may commit crimes in order to secure the conviction of a private criminal —would bring terrible retribution. Against that pernicious doctrine this Court should resolutely set its face."

The motions to suppress must be and hereby are granted.