THE PEOPLE OF PUERTO RICO, Plaintiff and Appellee, *v.* PORFIRIO DE JESÚS ROBLES, Defendant and Appellant.

Nos. CR-63-229 to CR-63-231. Decided May 11, 1965.

*Stanley L. Feldstein,* counsel designated by the Supreme Court to offer legal assistance to defendant on appeal. *J. B. Fernán-*

*dez Badillo, Solicitor General,* and *Peter Ortiz, Assistant Solicitor General,* for The People.

Division composed of Mr. Justice Pérez Pimentel, as Chief Judge of Division, pro tempore, Mr. Justice Blanco Lugo, and Mr. Justice Ramírez Bages.

MR. JUSTICE RAMÍREZ BAGES delivered the opinion of the Court.

Porfirio de Jesús Robles, appellant herein, was accused and convicted by the court of the offenses of burglary in the first degree (33 L.P.R.A. §§ 1591 and 1592), and violations of §§ 6 and 8 of the Weapons Law of Puerto Rico (25 L.P.R.A. §§ 416 and 418), after waiving trial by jury. He was sentenced to serve from five to ten years' imprisonment in the penitentiary, at hard labor, for the offense of burglary, six months in jail for violation of § 6 of the Weapons Law, and from two and one-half to five years in the penitentiary, at hard labor, for violation of § 8 of that Act.

On appeal, he assigns the commission of several errors by the trial court. Mr. Stanley Feldstein, whom we designated to represent appellant, has filed a painstaking and well-reasoned brief. We discuss below those assignments.

1. "The only corroboration of the accomplice's testimony consisted in evidence which was inadmissible because it was the fruit of an illegal search, and such evidence, even if it were admissible, was insufficient as corroboration."

■ The rule for determining whether the evidence of corroboration of an accomplice is sufficient was recently reiterated by this Court in *People* v. *Rodríguez Hernández,* 91 P.R.R. 176 (1964), as follows:

"Although the corroborative evidence should raise something more than a mere suspicion against the accused, it need not go so far as to establish by itself and without the aid of the accomplice's testimony that the accused committed the offense charged. We have repeatedly held that corroborative evidence does not have to be direct, nor very strong, provided it is sufficient to connect the accused with the commission of the of-

fense. *People* v. *Adorno,* 81 P.R.R. 504 (1959) ; *People* v. *Palóu,* 80 P.R.R. 351 (1958) ; *People* v. *Portalatín,* 72 P.R.R. 145 (1951) ; *People* v. *Rosario,* 68 P.R.R. 526 (1948)."

We copy below from the summary of the evidence made by the Solicitor General in his memorandum, but with certain clarifications for greater accuracy.

Witness Ángel Cruz Santana testified that the day of the occurrence José Luis Sánchez and appellant went to a bar in Cataño to fetch him and invited him to go for a ride in a green Taunus car belonging to appellant Porfirio de Jesús Robles. They drove as far as Ciales, reached Cástulo Torres' business where they purchased cigarettes. Then they went to another place and slept in the car until eleven in the evening. Appellant woke them up and went back to the business where they had purchased the cigarettes. Appellant then said that he was going to rob the place. José Luis Sánchez and the witness took a crowbar, two screwdrivers and a master key, "broke a board in the back of the business," went inside and took the money from the juke box, a ham, rum and Bologna sausage. While they burglarized, appellant stayed outside with a revolver watching in the car. He identified the revolver, the crowbar, the two screwdrivers and the key. All of this material was admitted in evidence without objection from the defense.

William Morales Sierra testified that on or about August 29, 1961, he was on duty as a detective in the zone of Ciales; that as a result of a number of burglaries perpetrated in that sector, he had received information from the aggrieved parties on the presence of a small yellow car. In the recent case of Cástulo Torres three individuals were suspected of having been in the burglarized business, and that according to information one of them was Porfirio de Jesús Robles who was known to the witness. Thus, on August 29 Morales Sierra saw appellant operating a Taunus car. Morales and another officer who accompanied him identified

themselves as members of the police and asked him to produce his license. Upon verifying that Porfirio was not an authorized chauffeur, they arrested him and searched his car where they found a rag paper bag containing American currency, five-cent nickels. After seizing the money, the officers took José Luis Sánchez and appellant to the police car which was parked next to the Taunus. Officer Morales then went back to the Taunus and discovered the revolver under the rug and seized it. He further testified: "We brought him to the car and after the car was searched again, on the right-hand side . . . (interruption)." (Tr. Ev. 29.) After testifying on the discovery of the revolver, he was asked:

"After seizing the revolver, did you find anything else in that car? —A piece of machete was then found.

.　　.　　.　　.　　.　　.　　.　　.

"Q. What else? —Nothing else was found there." (Tr. Ev. 31.)

Upon questioning by the defense, he said the following:

"Q. Did you search it again in the station? —We did in the station and interrogated him on other cases.

"Q. And when did you find the revolver? —When we searched the car there . . .

"I brought him to the car and again we inspected the car." (Tr. Ev. 33.)

He further testified that they seized in the car the tools described by witness Cruz Santana.

Then they took Sánchez and appellant to the Ciales station and questioned them. Porfirio de Jesús said that he had accompanied Sánchez and Cruz to Cástulo Torres' store where the burglary had been perpetrated, and that he had kept the evidence of the case, the rum, in a house in Trujillo Alto. They went there and found the fruits of the burglaries, the boxes of rum and cigarettes, under a bed.

Cástulo Torres Hernández was the owner of the burglarized business. On the evening of August 27, 1961, he closed

his business around half past ten and opened it at seven in the morning. Upon investigating he noticed that several bottles of rum, the chute of the juke box, 14 pounds of coffee powder, hams, cigarettes and miscellany had been stolen. Around nine or half past nine of that evening defendant went to his business in the company of two other men. Afterwards he identified Cruz Santana and José Luis Sánchez as appellant's companions. The witness testified that they purchased cigarettes and that they were in a small gray car operated by appellant. He reported "the occurrence to the police and they went to investigate, and the next day the police came to notify me that two had been caught."

We have no doubt that the accomplice's testimony was fully corroborated by (a) appellant's admission that he accompanied Cruz to Cástulo Torres' store where the burglary had been perpetrated; (b) Cástulo Torres' testimony placing appellant at the scene of the crime shortly before the perpetration, accompanied by the accomplice, who was identified by Torres; and (c) finding the objects stolen in the premises indicated by appellant. *People* v. *Rodríguez Hernández, supra; People* v. *De Jesús,* 73 P.R.R. 699 (1952).

Appellant maintains, however, that the seizure of the revolver and the tools was illegal, and, therefore, that they should not have been admitted in evidence for the purpose of establishing the violations of §§ 6 and 8 of the Weapons Law, and, consequently, that appellant's admissions are inadmissible since they were obtained by confrontation with evidence illegally obtained. It is argued that according to the doctrine which we enunciated in *People* v. *Sosa Díaz,* 90 P.R.R. 606 (1964), the search of an automobile is not reasonable when it takes place "in appellant's absence, when the latter had already been arrested and was under police custody, at a place different and distant from the place where the vehicle was located," and, therefore, the evidence obtained

by such search is not admissible by constitutional mandate. *People* v. *Rodríguez Rivera*, 91 P.R.R. 442 (1964).

The evidence shows that the public peace officers detained appellant in a ward of Ciales while operating his Taunus car, in the company of José Luis Sánchez. He was required to produce his license. He said that he was not an authorized operator. When policeman Morales was asked, on cross-examination, why they stopped the vehicle, he answered that "a number of burglaries had been perpetrated in Ciales . . . . In the last case of Cástulo Torres we suspected of three individuals who had been to a business, and I was informed that one was Porfirio de Jesús." He also testified that he knew appellant. One of the officers then arrested them, searched the vehicle, and found in the trunk a rag paper bag containing $6.15 in nickels and the above-described tools. The officer took appellant and his companion, José Luis Sánchez, to the police car which had been parked near the Taunus, and the officer went back to appellant's car, searched it again and found a revolver under the rug on the right-hand side of the front seat. Upon questioning by the trial judge, the officer testified that he arrested appellant because he was not an authorized driver.

The circumstances of this case are quite different from those in *Sosa Díaz, supra*, and *Preston* v. *United States*, 376 U.S. 364 (1964), since in the latter defendant was in a police station when the vehicle was searched far from there. In the present case, however, the search was incidental to a lawful arrest—coetaneous with the arrest—wherefore the seizure of the articles was justified according to the holding in *Preston, supra*. The searches of appellant's vehicle immediately after his arrest, while he was in his Taunus car and immediately after appellant was taken to the police car which was parked near the Taunus, were reasonable searches, incidental to the arrest, and the money, the tools and the

revolver found in the course of those searches was therefore admissible in evidence.

However, in *Sosa Díaz* we also said that "in the absence of special circumstances, the mere commission of a minor traffic offense does not authorize the search of the vehicle. There must be, we repeat, adequate justification for the search." We must therefore decide whether or not, under the circumstances of this case and on the authority of the doctrine announced in *Sosa*, the searches of appellant's vehicle immediately after his arrest, for driving without authorization, were legal. To that end, it is necessary to determine the exact extent of that doctrine.

In *United States* v. *Rabinowitz*, 339 U.S. 56, 66 (1950), it was said that the legality of a search without a warrant depends on the reasonableness of the search, and the latter in turn depends upon the facts and circumstances—"the total atmosphere" of the case. In *United States* v. *Di Re*, 332 U.S. 581, 585 (1948), it was said that according to the doctrine of *Carroll* v. *United States*, 267 U.S. 132 (1925), there is a distinction between what is a reasonable search as applied to an automobile and as applied to a residence or fixed premises. However, in *Henry* v. *United States*, 361 U.S. 98 (1959), it was added that such distinction did not dispense with the need for probable cause. In *United States* v. *One 1963 Cadillac Hardtop*, 224 F.Supp. 210 (U.S.D.C. E.D. Wis. 1963), it was said that:

"There is a common thread running through all cases upholding a search without a warrant. The searcher must have in mind some reasonably specific thing he is looking for and reasonable grounds to believe it is in the place being searched . . . . At the outset, the objectives of the search must be incidental to the particular arrest. In the case of a stop sign violation, there is no fruit of the crime. The means whereby the crime was committed is the vehicle itself. Further, there is no contraband associated with such a violation. The arrest must provide the reasonableness. To hold otherwise would do violence to the very

protection that the constitutional requirements of the fourth amendment are designed to afford."

This case sustained the search of an automobile incidental to an arrest for a stop-sign violation on a street because the police recognized the occupants as suspected narcotics law violators, that one of them was a user of drugs and had been committed because of this, and that another was acting in an obnoxious and abnormal manner.

In *Rios* v. *United States*, 364 U.S. 253 (1960), it was said that if the facts were that two Los Angeles police officers, dressed in plain clothes and riding in an unmarked police car, observed a taxi standing in a parking lot around ten in the evening in a neighborhood having a reputation for "narcotics activity"; that they saw an individual look up and down the street, walk across the lot and get into the cab; that they had not seen him before, nor received information of any kind to suggest that someone might be engaged in criminal activity at that place and hour; that the officers approached the vehicle for routine interrogation and that they had no intent to detain defendant beyond the momentary requirements of such a mission, and that at the officers' request defendant revealed a package found to contain narcotics, that a lawful arrest could be made as soon as this occurred; in such case the police had reasonable cause to believe that a felony was being committed in their presence.

■ The said *Sosa Díaz* rule bars the search of a vehicle only in cases of (a) a minor traffic violation, and (b) in the absence of special circumstances. In *State* v. *Scanlon*, 202 A.2d 448 (N.J.A. Div. 1964), it was said that the arrest of a person for failure to have his driver's license in his possession was not sufficient cause to search his automobile.[1] In *State* v. *Cuellar*, 200 A.2d 729 (Conn. 1964), defendant

[1] In this case the court added by way of obiter dictum that the inferences justifying the searches in these cases did not arise from the violations of traffic regulations.

was arrested for driving without an operator's license. The arrest was made several hours after his automobile was searched and some goods stolen from a store had been found. It was said that the search was not incidental to a lawful arrest.[2] It has also been said that to make a "U" turn in violation of the Vehicle Code, and the fact that the damaged vehicle suggested a possible accident, did not justify the search of the vehicle. *People* v. *Molarius*, 303 P.2d 350 (Cal. 1956); *People* v. *Gale*, 294 P.2d 13 (Cal. 1956). In other cases the search was justified after stopping the vehicle for having defective lights or for weaving back and forth on the highway, owing to special circumstances consisting in the movement of the occupants in hiding something under the seat, or of throwing a package out of the vehicle which was found to contain marihuana cigarettes. *Harris* v. *State*, 354 S.W.2d 155 (Crim. Appeals Texas, 1962); *People* v. *Anders*, 333 P.2d 854 (Cal. 1959); *People* v. *Sanson*, 319 P.2d 422 (Cal. 1957). See, also, *Kuhl* v. *United States*, 322 F.2d 582 (9th Cir. 1963); *Hart* v. *United States*, 316 F.2d 916 (5th Cir. 1963); *People* v. *Zeigler*, 100 N.W.2d 456. See, in particular, the dissenting opinion of Mr. Justice Smith at p. 463 (Mich. 1960).

In *State* v. *Freeland*, 125 N.W.2d 825 (S.C., Iowa 1964), a marshal stopped a car because the license plate was not visible; it was obscured by paint. A number of burglaries had occurred in the vicinity. He recognized the driver as a parolee. The vehicle had been parked at midnight in front of a commercial establishment. The marshal ordered that the establishment be investigated, to find out whether it had been burglarized, while he checked the driver's license, and upon learning that it had been, he ordered the occupants of the vehicle to get out. In order to get out it was necessary

---

[2] Also in this case the court added that most jurisdictions hold that the right to search a car turns on the right to arrest for the suspected felony rather than for a traffic violation.

to remove a box containing goods which were identified as his by the owner of the establishment in question. It was held that there was probable cause to believe that defendants had committed an offense, and, therefore, that their arrest and search was valid. In *State* v. *Durham*, 367 S.W.2d 619 (Mo. 1963), the driver of a car was arrested for displaying an improper license. Through the back window of the car a trooper saw a radio with the price marked on and a box of new screwdrivers. At his request, the driver opened the trunk of the automobile for inspection. Defendants were asked to go to the rear of the car, and the trooper searched it for weapons to insure the safety of himself and his fellow officer. During the search he found between the seats, under a blanket, several articles which were afterwards found to have been stolen the night before from a commercial establishment. It was held that the search in question was valid, and, therefore, the articles found were admissible in evidence because it was made in connection with a lawful arrest to look for weapons to insure the safety of the police officers. In *People* v. *Bannan*, 125 N.W.2d 875 (Mich. 1964), *cert. denied*, 33 U.S. L.Week 3244, two police officers stopped a car in front of a motel at 2 a.m. When defendant got out of the car and was approached by one of the officers, the latter told him that they were stopping the car for disobeying the red light. The defendant displayed his driver's license and that of the car which was in the name of another person who, according to defendant, was his brother-in-law. While this was occurring, another officer went to talk with the other occupant of the car. The defendant and his partner gave conflicting statements as to their destination, purposes, etc. One of the officers walked up to the car, opened the trunk where he found many burglar tools. They were handcuffed and placed in the police car. A detailed search of the car disclosed a .38-caliber revolver. Defendant was convicted of carrying a concealed weapon and the said tools. He filed a motion

to suppress the evidence in question alleging that the search was illegal. It was held that the search was incidental to an arrest (this act occurred when the vehicle was stopped and the occupants were informed that they were being detained for disobeying a red light), for the officers had information that:

(1) it was 2 a.m. on Sunday

(2) they were detained for disobeying a red light

(3) the automobile was not registered in the name of either of its two occupants

(4) there was an open bottle of vodka in the front seat

(5) the occupants were from Indiana; the driver displayed a Florida driver's license

(6) both gave conflicting versions as to their residence, destination, purpose of the trip, and the length of the intended stay.

In this case it was concluded that the provision of the Constitution of the State of Michigan that the section on illegal searches shall not be construed to bar from evidence in any criminal proceeding any narcotic drug, firearm, bomb, explosive or any dangerous weapon, seized by a police officer outside the curtilage of any dwelling house in that state, does not violate the Constitution of the United States. However, apart from that provision, the Supreme Court of Michigan determined that there is some difference between searching a home and searching an automobile, and that the reasonableness of searching the latter is a judicial question to be determined in view of the circumstances under which the search is made; when the search is made as routine following the violation of a traffic regulation, it is not valid, but in this case the facts and conflicting statements made by appellant and his partner were inconsistent and irreconcilable with those of some innocent travelers on the highway.

In *State* v. *Harris*, 121 N.W.2d 327 (Minn. 1963), some police officers, while patrolling in an unmarked vehicle,

around midnight noticed an automobile which was parked on the street at an odd angle with the rear pointing into a driveway where a trailer holding a boat was parked. They noticed that the driver was looking backward toward the home near which the trailer was parked. They ordered the driver to step out of his car and asked him what he was doing. He stated that he had become lost. Noticing a black bag in the back seat, they asked defendant to show it to them, and defendant opened it saying that it was just a bunch of old clothes, but the officers found in it a .22-caliber revolver. Defendant was then handcuffed, the search continued and it revealed other weapons and goods, later found to be stolen. The Minnesota rule on arrest is similar to that established in Puerto Rico. In concluding that the search in this case was justified and the evidence produced admissible, the court was based (a) on the fact that it was late in the evening; (b) defendant's car was parked at an odd angle; and (c) defendant offered an improbable reason for being in the area. The court said that all combined raised a reasonable inference that the situation should be given careful investigation. The arrest took place when the policemen ordered defendant to alight from the car, and since this was based upon probable cause, the search made incident to it was lawful. The court also based its conclusion on the fact that defendant did not object to the search and therefore consented, and such consent constituted a waiver of his right to object later that the search was unreasonable.

In *People* v. *Cowman*, 35 Cal. Rptr. 528 (1963), two police officers, while patrolling in a car, observed around midnight that defendant's vehicle was parked near an intersection. They noticed that it was occupied by three men who were looking in the direction of a motel. As the police passed the vehicle the headlights went on and out again, proceeded and stopped on another street. The car was being driven in a legal manner. The officers approached them, asked them

to identify themselves, and the owner of the car was asked if they might search. He said that he did not care. They discovered a sawed-off shotgun and several shells. The court said that the traffic regulations, the traffic census, the identification of persons where proper, and many other causes, give occasion to the police to stop cars in circumstances which do not imply arrest or charge of crime. In this case the act of the police officers in stopping defendant's car did not constitute an improper invasion of a privacy right, nor a violation of his constitutional rights. It added that:

"The rationale of all these decisions is that an officer of the law, employed to maintain the peace and to prevent crime, as well as to apprehend criminals after the fact, has both the right and the duty to make reasonable investigation of all suspicious activities even though the nature thereof may fall short of grounds sufficient to justify an arrest or a search of the persons or the effects of the suspects. Experienced police officers naturally develop an ability to perceive the unusual and the suspicious which is of enormous value in the difficult task of protecting the security and safety of law-abiding citizens. The benefit thereof should not be lost because the cold record before a reviewing court does not contain all the particularized perceptions which may have been so meaningful at the scene."

In *People* v. *Watkins*, 166 N.E.2d 433 (Ill. 1960), it was said that although an arrest for parking in a prohibited zone does not in itself justify the search of a car, other violations of traffic laws—as, for example, the absence of license plates—would justify it. It was so held in *Duncan* v. *State*, 234 S.W.2d 835 (Tenn. 1950). See Annotation, *Search and Seizure Before Arrest*, in 89 A.L.R.2d 715, 721–46.

In *Gaskins* v. *State*, 89 So.2d 867 (Fla. 1956), it was said that the search of a truck parked without lights at an intersection and its left wheels over the paved road was valid. The defendant, owner of the car, was arrested for unlawful parking and afterwards for violation of the lottery

laws upon finding lottery slips, which were therefore admissible in evidence.

■ It is evident from the foregoing that the rules applicable to cases such as the present may be summed up as follows:

(1) The legality of a search without a warrant depends on the reasonableness of the search, and the latter in turn depends on the facts and circumstances—the total atmosphere—of the case.

(2) There is a distinction between a reasonable search as applied to a car and as applied to a residence or fixed premises, but such distinction has not dispensed with the need for probable cause.

(3) A mere minor traffic violation does not justify the search of a car.

(4) But special circumstances may furnish the necessary justification, in addition to a traffic violation.

In the cases *supra* reference is made to several of those special circumstances, as for example, that the police (1) recognized the occupants of the car as suspected narcotics law violators and that one of them was a user, and that another was acting in an abnormal manner; (2) noticed the movement of the occupants in hiding or throwing something out of the car; (3) knew that several burglaries had occurred in the vicinity, and recognized the driver as a parolee, and noticed that he had parked the car in front of a business establishment which had been burglarized; (4) noticed new merchandise inside the car—the search was deemed valid in connection with a lawful arrest, since it was made for the purpose of searching for weapons to insure the safety of the police officers; (5) the search of the car was valid because (a) the fact occurred in the evening, (b) the car was parked at odd angle, and (c) defendant offered an improbable reason—had become lost—for being

in the area; (6) approached the car and asked the owner if he could search, and searched it when the latter said that he did not care. In *Cowman, supra,* it was said that the police has both the right and the duty to make reasonable investigations of all suspicious activities, even though the nature thereof may fall short of grounds sufficient to justify an arrest or search of the person or the effects of the suspects; the traffic regulations, the traffic census, the identification of persons where proper, and many other causes, give occasion to stop cars in circumstances which do not imply arrest or charge of crime; (7) (a) stopped the car for violation of a traffic regulation at 2 a.m., and (b) both occupants of the car gave conflicting versions as to their residence, destination, purpose of the trip, and length of stay.

■ In the case under consideration the record shows the following circumstances which, in our opinion, justified the search of the car:

(a) The police had knowledge of a number of burglaries in the area of the facts.

(b) The presence of a small car was common to all, which some said to be yellow and others gray.

(c) Regarding the burglary in this case, the aggrieved party informed the police of the circumstances of the occurrence, including that the previous night three men had been in his business and, presumably, that when informing the police about the occurrence, he described them, since police officer Morales testified that three individuals were suspected of the burglary and that he was informed that one was appellant whom Morales knew.

(d) The policeman saw appellant driving a small car; stopped him, asked him for his operator's license, and the latter admitted that he was not authorized to drive.

(e) Appellant was arrested for said violation of the

Vehicle and Traffic Law (9 L.P.R.A. §§ 721 and 722).[3]

(f) Two searches of the vehicle were made immediately after arrest, as a result of which a weapon, the burglar tools and part of the stolen merchandise were found in the vehicle.

These circumstances clearly reveal that the reason for searching the vehicle in this case was not merely a minor traffic violation. The police were looking for appellant in connection with Cástulo Torres' burglarized establishment. They knew that a small car was involved. This action constituted part of an investigation of a number of burglaries occurring in the area. From these circumstances, similar to

---

[3] The Public Works Department informs that during the years 1962, 1963 and 1964 the annual average was some 33,000 accidents in which an average of 400 persons were killed and 16,000 injured. The Office of the Commissioner of Insurance informs that during 1961, 1962, 1963 and 1964 the motor vehicle insurance companies collected the following premiums and paid the following losses:

| Type of Insurance | Year | Premiums Collected | Losses Paid |
|---|---|---|---|
| Personal Injuries | 1961 | $6,471,238 | $3,046,295 |
| ” ” | 1962 | 6,918,218 | 3,404,326 |
| ” ” | 1963 | 8,733,395 | 3,359,547 |
| ” ” (1st semester) | 1964 | 4,949,049 | 2,096,597 |
| Damages to Property | 1961 | 3,161,535 | 1,450,678 |
| ” ” | 1962 | 3,418,965 | 1,817,235 |
| ” ” | 1963 | 4,044,595 | 2,149,654 |
| ” ” (1st semester) | 1964 | 2,267,383 | 1,155,535 |
| Physical Damages to Car | 1961 | 4,618,723 | 2,361,037 |
| ” ” | 1962 | 5,620,387 | 2,949,278 |
| ” ” | 1963 | 6,914,365 | 3,937,868 |
| ” ” (1st semester) | 1964 | 4,269,957 | 2,515,911 |

These statistics show that the traffic situation in Puerto Rico is very critical. Cf. People v. Superior Court, 91 P.R.R. 19 (1964); People v. Donatio Maldonado, 89 P.R.R. 99 (1963). Driving without a license presupposes lack of skill and knowledge of the traffic safety regulations and measures. In the light of these realities, the violation which exposes drivers and occupants of vehicles and pedestrians to greater and imminent dangers cannot be considered as a "mere traffic violation."

those in *Freeland, supra; Burham, supra; State* v. *Harris, supra;* and *Cowman, supra,* there arose a reasonable inference which justified investigation of the situation and the searches of the car following a lawful arrest.

■ We must point out further that the contention in question is untimely, since it is made for the first time on appeal. As we stated in *People* v. *Díaz Cintrón,* 91 P.R.R. 139 (1964), "the procedure to prevent that evidence unlawfully obtained be presented is by motion for suppression of the evidence filed prior to the trial. *People* v. *Nieves,* 67 P.R.R. 283 (1947)." We made it clear, however, that "where by the direct or proper cross-examination of the state's witnesses, it is made to appear, or it is otherwise admitted, that the articles which are offered in evidence were unlawfully seized. Under those circumstances, it is the duty of the trial court, upon objection, to refuse to receive them in evidence." Rule 234 of the Rules of Criminal Procedure of 1963 permits this procedure. As pointed out by the Solicitor General, if the question of suppression of the evidence had been timely raised, the district attorney would have had an opportunity to clarify any doubtful aspect of officer Morales' testimony. Although that is the proper procedure and also the best practice, and in this case the defense attorney, on the contrary, announced that he had no objection to the presentation of the evidence in question, we decided to consider the contention on the impropriety of the admission of the evidence on the ground that it involves a fundamental question. *People* v. *Torres Rosario,* 89 P.R.R. 142 (1963); *People* v. *Aletriz,* 85 P.R.R. 621 (1962); *People* v. *Oquendo,* 83 P.R.R. 227 (1961).

To hold that the search in this case was unreasonable because it was not made for the purpose of discovering and seizing articles connected with the traffic violation which motivated the arrest, and because the police officer testified that the arrest was due to the fact that appellant said that he had no license and not to the information received by the

police that appellant was involved in the burglary, constitutes a restrictive analysis and an excessively technical weighing of a part of the record of the case. As stated in *Cowman, supra,* the cold record of the entire situation "does not contain all the particularized perceptions which may have been so meaningful at the scene." Undoubtedly, the police in this case stopped appellant's car because they had information connecting him with the burglary. His arrest for driving without a license, which in our opinion is index of substantial irresponsibility, was but an additional ingredient, that is, another of the special circumstances which as a whole justified the search.

2. "Testimony which was clearly inadmissible under the circumstances was admitted in evidence."

■ It is argued that the testimony of two witnesses aimed at establishing that at some time prior to the date of the facts charged to appellant the latter carried a revolver similar to that seized, is irrelevant, immaterial and prejudicial, since such testimony did not present any material fact of the crime charged, nor any fact forming part of the res gestae, nor was presented to show motive, intent, premeditation, malice or common scheme. This error was not committed. The trial judge admitted the testimonies in question for the purpose of comparing the description of the revolver which the witness saw on the person of appellant with the structure of the revolver which the latter had allegedly carried.

■ The objection to the admission of the articles stolen which were found by the arresting officer in the residence of appellant should not prosper either, since the latter had informed him that those articles were in those premises. The record merely shows that appellant informed the police that he had kept the evidence of the case in a house in Trujillo Alto, and that the police went there, to appellant's

residence, and found the merchandise stolen from Cástulo Torres under the bed. It does not appear from the evidence whether or not that residence was occupied by other persons, and if it was, whether or not they permitted the police to search it. It may be inferred from the record that in appellant saying where he kept the stolen merchandise, he was in fact consenting to the search and seizure by the police.

 Lastly, the error in admitting the officer's testimony on the admissions which appellant made to him because he did not inform thereon in his testimony before the investigating magistrate was not committed. The former explained that many details of the investigation did not appear in his original testimony. This is not a legal requisite. At the most, the assignment in question is aimed at doubting the officer's credibility. No reason has been shown to justify our intervention in the trial judge's action on this particular.

3. "Due caution for the protection of appellant's rights was not observed during the trial."

 It is argued that there was absence of evidence on the corpus delicti as to the element of the hour the offense was committed. This is not correct, since the aggrieved party, Cástulo Torres, testified that he closed the burglarized business about half past ten in the evening, and that the following morning, at seven o'clock, he noticed that the stolen articles were missing and that the establishment had been burglarized, and witness Cruz Santana testified that they perpetrated the burglary shortly after eleven in the evening of the day of the occurrence. Although this aspect of the accomplice's testimony was not corroborated, it was not necessary to do so. *People* v. *Portalatín*, 72 P.R.R. 145, 154 (1951).

The judgments rendered in these cases by the Superior Court, Arecibo Part, on February 14, 1962, will be affirmed.

Mr. Justice Blanco Lugo dissented in a separate opinion.

—0—

Mr. Justice Blanco Lugo, dissenting.

The facts as recited in the majority opinion show, in my judgment, that the search made, though incidental to a lawful arrest for a violation of the Vehicle and Traffic Law—operating a motor vehicle without being duly authorized—was unreasonable. The unreasonableness does not refer to the contemporaneousness with the arrest, but to the lack of concurrence of any of the circumstances to which we referred in *People* v. *Sosa Díaz*, 90 P.R.R. 606 (1964). It was not made for the purpose of discovering and seizing articles connected with the violation committed, as the fruits thereof, or the tools used as means for its perpetration, or to seize weapons or other things which could be used to escape custody. This is so because I fail to see the manner in which it may conceivably be spoken of "fruits of the offense" or tools for its perpetration in connection with the violation of unauthorized driving. On the other hand, if the testimony of the officer who carried out the arrest and the subsequent search shows anything, it is that appellant docilely obeyed the orders of the police officers and that he made no attempt to offer resistance or to evade. If this is so, how can the search made be justified?

It is true that the detective said that "we suspected [in the burglary of Cástulo Torres] of three individuals who were [*sic*] in the business, and that according to information one of them was Porfirio de Jesús," but, assuming that this is sufficient to comply with the requirement for the existence of "reasonable causes" which justified an arrest without a warrant—§ 16(3) of the Code of Criminal Procedure, 34 L.P.R.A. § 243, *cf.* Rule 11(c) of the Rules of Criminal Procedure of 1963—the witness himself reiterated over and over again that the arrest was due to the fact that when he was detained appellant said that he had no license, not·

to the "suspicion" that he had entered the burglarized establishment.[1]

Once it is concluded that the search, though lawful, was unreasonable, the articles seized were inadmissible, as would be any admission made by appellant to the detective, since obviously they were induced by the confrontation with the fruits of the unreasonable search. *People* v. *Rodríguez Rivera*, 91 P.R.R. 442 (1964).

What would there remain then as evidence of corroboration? Only, according to the delegate of the Solicitor General, the testimony of the owner of the burglarized business which places appellant with two other persons in the burglarized business at 9:30 in the evening of the occurrence, more than two hours before the commission of the offense, which took place after eleven of the same evening. I believe that that element of proof does not constitute *by itself* sufficient corroboration. It is true that in some cases we have considered the presence of defendant as a link in the evidence of corroboration, but it has been *jointly* with other circumstances.

Lastly, the Solicitor places great emphasis on defendant's testimony that he had been in the business, but that does not refer, as it is sought to be interpreted, to the moment of the penetration in the business, but to the time referred to in the preceding paragraph when he went to purchase cigarettes.

I cannot forego the opportunity to disapprove the assertion in footnote 3 to the effect that the operation of a motor vehicle without a license is not a mere traffic violation. A contrario sensu, it is held that it is a *serious* violation, based on an evident *non sequitur*: the serious traffic circumstances and the high incidence of accidents. In other words, if those circumstances or incidence were not present, it would not

---

[1] If this had been the situation, the search could hardly have been made without the corresponding warrant issued by competent judicial authority. *Cf. Flores Valentín* v. *Superior Court*, 91 P.R.R. 782 (1965).

be serious, but it would be a mere violation. The statistics cited do not constitute either adequate basis for such conclusion, since the number of accidents or losses in which unauthorized drivers were involved is not clearly stated. To pretend to use the total results, without more, is honestly to indulge in the vice of overstatement.

In view of the fact that there was not sufficient corroboration, I am of the opinion that the judgments should be reversed and appellant acquitted.