Eddie BIRD, Appellant,

v.

STATE of Oklahoma, Appellee.

No. A–16795.

Court of Criminal Appeals of Oklahoma.

Feb. 28, 1973.

Curtis A. Parks, Public Defender, Tulsa County, for appellant.

Larry Derryberry, Atty. Gen., Raymond Naifeh, Asst. Atty. Gen., for appellee.

## DECISION AND OPINION

BRETT, Judge:

This is an appeal from a conviction on January 27, 1971, for possession of marijuana, after former conviction of a felony, in which appellant, Eddie Bird, who will hereafter be referred to as defendant, was sentenced to serve from fifteen (15) to forty-five (45) years imprisonment. Defendant was represented by the public defender, waived a jury, and was tried before the court without a jury. Defendant's arrest arose out of an alleged hit and run charge, which was later dismissed.

Defendant first complains that the first information for possession of marijuana, filed July 7th, was subsequently dismissed at preliminary examination. Defendant's preliminary examination was held on July 31st before the Honorable Ronald N. Ricketts. When the state failed to produce the laboratory report proving the substance to be marijuana, the hearing was continued until 1:30 P.M. The prosecution again failed to produce the report, so the examining magistrate sustained defendant's demurrer and dismissed the information, with the admonition: "Of course, the case might possibly be re-filed if new information is obtained."

Defendant was retained in the county jail on the hit and run charge, and on a federal "hold order." Later, the hit and run charge was dismissed; and the federal hold order was removed when it was found to be without basis. On August 3, 1970, the state filed a second information which set forth the same allegations contained in the dismissed information. On November 6th a second preliminary examination was had on the marijuana charge, before the Honorable Robert Caldwell serving as magistrate. At that hearing, defendant's motion to dismiss was denied and defendant was bound over to stand trial.

Defendant filed a second motion to dismiss in the trial court, prior to his arraignment. His arraignment was continued several times between November 13th and December 2nd, when defendant's motion to dismiss was again denied and he was arraigned. Defendant was tried without a jury on January 18th and 19th. He was found guilty. Judgment and sentence was imposed on January 27, 1971, and defendant was transported to the State Penitentiary. From the time of defendant's arrest he remained in jail, unable to post bond.

■ Relying on this Court's decision in Jones v. State, Okl.Cr., 481 P.2d 169 (1971), defendant first asserts that the trial court was without jurisdiction to place defendant on trial, because the identical charge had been dismissed earlier by the examining magistrate; and therefore, defendant asserts the state committed reversible error when the second preliminary examination was had before a different magistrate, other than the one who had earlier dismissed the same charge. We would agree, except that defendant's second preliminary examination, which bestowed jurisdiction on the trial court, was conducted prior to this Court's decision in Jones v. State, supra. This Court held in West v. State, Okl.Cr., 503 P.2d 221 (1972), "the provisions of Jones v. State, supra, shall not have retroactive application prior to the date the decision was rendered." Therefore, we deny defendant's first proposition.

Defendant's second proposition asserts the trial court committed error when defendant's motion to suppress was denied. Defendant argues that the officer exceeded his authority when he conducted a search of the contents of a brown paper sack found in the car seat. His argument contends that the inconsistent testimony of the officer, given at the preliminary hearing and later at the trial, coupled with the irregular manner in which the officer testified he conducted the search and seizure, denotes a quest by the officer with intention to find the contraband items, and thereby invades a constitutionally protected area.

The arresting officer testified that he stopped the defendant after receiving a radio message that "a small negro male, driving a black '69 Olds Tornado bearing California license No. RTR-750, had been in a hit and run on North Greenwood," in Tulsa. The report also stated that personal injury had resulted. The officer observed the vehicle described in the radio report, traveling on the Skelly By-pass; he radioed for backup assistance, followed the vehicle for a block or so, and stopped it with his red light. The officer said he approached the driver's side of the vehicle with his flashlight in his hand, asked defendant for his driver's license, and was informed that defendant had a California driver's permit. The officer testified that he told defendant he was under arrest while defendant was still sitting in the vehicle, but he did not inform defendant what he was arrested for. On direct examination the prosecutor asked, "What did you do next?" The officer answered, "Next to Mr. Bird's leg was partial clothing—had a lump under it. I reached over and patted it to make sure there wasn't no weapons there." The questions and answers following were:

"Q. Was the door to his automobile open or shut at the time?

"A. Shut.

"Q. And you reached through the window to do this?

"A. Yes, sir, behind his head.

"Q. Did you get that particular item from the car?

"A. Not at that time I didn't. I didn't take it out of the car, no sir.

"Q. What did you do?

"A. I told Mr. Bird to set out of his car after I examined what was under the partial clothing.

"Q. Did you examine that before Mr. Bird got out of the car?

"A. No, sir. I first examined it before he got out of the car.

"Q. That was my question. Did you examine the items contained in the bag before Mr. Bird got out of the car?

"A. Yes, sir.

"Q. Would you tell the Judge what you saw or observed in this bag?

"A. I saw leaves, seeds which had the characteristics of marijuana lying in the bottom of a brown paper sack."

. . . . . .

"Q. Was there anything else other than these seeds and particles that you observed in the sack?

"A. Yes, sir.

"Q. What was that?

"A. Seven matchboxes."[1]

Since it appeared that the officer, with the flashlight in one hand, reached behind defendant's head and over his shoulder to inspect the clothing and paper bag, the following questions and answers resulted on cross-examination:

"Q. Other than the brown paper sack, was there anything else on the front seat?

"A. No, sir.

"Q. You're telling the Court that you reached over Mr. Bird's shoulder. Is that correct?

"A. Yes, sir.

"Q. And you reached over his shoulder and bent down onto the front seat. Is that correct?

"A. Yes.

"Q. And that's the way you recovered this or felt in there to see if it was a weapon?

"A. Yes, sir."

. . . . . .

"Q. Could you tell us approximately how much time it took for you to spot this lump over there, to reach over Mr. Bird's neck and over his shoulder and reach down and pick up the article of clothing and notice the paper bag and reach inside of the paper bag and determine if there was marijuana inside there?

"A. I don't know how long it took me; just moved the clothing, picked up the sack, shined my light in it, looked down in there."[2]

Defendant's testimony at the hearing on the motion to suppress was considerably different to that of the arresting officer. Defendant related that he stopped his car, got out of the car, and walked to the back of the vehicle where he met the two officers. They inquired if he had been involved in a hit and run accident, and he said no. He related that the officers instructed him to place both hands on the back of the car and spread his feet apart. Thereafter, he testified one of the officers looked around the car for dents, etc. Defendant testified the officers who arrived in the second police car allegedly found the sack of marijuana; that he watched the officers through the back car window. He testified the officers appeared to reach under the car seat to retrieve the sack.

Defendant also testified that he did not know that either the sweater, or the sack of marijuana, was in the car. He said that about 3:00 A.M. he left the Cincinnati Bar in the 2000 Block of Cincinnati with Pat Manning and his wife, in Manning's car; that they drove him to the Will Rogers Motel to pick up the car from Monroe B. Harris; that the car belonged to Harris' girl friend in Los Angeles; and that he had not been in the car since the morning of July 3rd. He said that he was on his way to Dallas when he was arrested. It appears that the federal hold order was premised on the California automobile, but that order was removed when it was learned the vehicle was not stolen. Defendant also admitted that he had been convicted for burglary and escape in California, and that he was placed on three years probation on a federal forgery charge. However, those convictions do not lessen defendant's constitutional rights.

Special District Judge McDougal testified that he dismissed the hit and run charge because of a lack of identification. He testified that at an informal hearing the prosecution witness, who was within three or four feet of the hit and run accident, could not identify defendant as the driver of the car, and stated that the car involved in the accident was an El Dorado Cadillac. The information presented the Judge showed defendant was driving an Oldsmobile, so the hit and run charge was

---

1. Transcript of evidence, pp. 19, 21, and 22.

2. Transcript of evidence, pp. 32 and 33.

dismissed. There is no showing from whom the license number was obtained.

 Considering now defendant's motion, the officer testified that he actually stopped the defendant when defendant violated a traffic ordinance, because "he ran up on the left curb coming back on the street." The record indicates that the service road was a single lane road, even though the officer testified that it was wide enough for two lanes. Notwithstanding, the officer no doubt had probable cause to stop the defendant premised upon the "hit and run" accident report, but the officer testified that he stopped defendant's car because of the erratic driving. Under the nighttime circumstances, the officer was authorized to conduct a limited search for weapons. "The rule allowing contemporaneous searches is justified, for example, by the need to seize weapons and other things which might be used to assault an officer or effect an escape, as well as by the need to prevent the destruction of evidence of the crime . . ." Preston v. United States, 376 U.S. 364, 84 S.Ct. 881, 11 L.Ed.2d 777 (1964). In the instant case, the officer testified—if one is to believe he conducted his search as he said he did—that he patted the sweater and felt the sack under it "to make sure there wasn't no weapons there." He removed the sack, opened it, shined his flashlight inside the sack and saw leaves and seeds in the bottom of the sack, which had the characteristics of marijuana. However, the officer's probable cause to arrest defendant pertained to either a minor traffic violation, or to an alleged hit and run report. "The right to search and the validity of the seizure are not dependent on the right to arrest. They are dependent on the reasonable cause the seizing officer has for belief that the contents of the automobile offend against the law." Chambers v. Maroney, 399 U.S. 42, 90 S.Ct. 1975, 26 L. Ed.2d 419 (1970).

 "Ordinarily, a minor traffic violation will not support a search and seizure."

Watt v. State, Okl.Cr., 487 P.2d 961, 962 (1971). Consequently, if the arrest of defendant was premised upon the traffic violation, the officer's search beyond that required for the presence of weapons, was unwarranted. If the search and seizure was premised upon the "hit and run report," the question presented is: "Was the search incident to the arrest?" "Search incident to arrest is unreasonable if there is a lack of relation between the search and the offense for which the arrest was made." Watt v. State, supra. In Lawson v. State, Okl.Cr., 484 P.2d 1337, 1339 (1971), this Court observed the following:

> "[T]he legitimate objectives of warrantless searches of the person incident to arrest seem to be (1) seizure of fruits, instrumentalities and other evidence of the crime for which the arrest is made, in order to prevent its destruction or concealment; and (2) removal of any weapons that the arrestee might seek to use to resist arrest or effect his escape. * * * [T]he search must be directed to finding evidence which the arresting officer has probable cause to believe will be found on the person, and * * * the search be no more intrusive than necessary to recover such evidence. For some crimes—and more particularly for most traffic crimes—no search of the person for evidence may be allowed at all because no evidence exists to be found."

Admittedly, the offense of hit and run with personal injury is a felony offense; and clearly, because of the time of night, the officer was entitled to search for weapons; but the search of the sack—taken from the vehicle—offers concern considering the extent of the search and seizure under these facts.

 Mr. Homer Spencer, chemist and bacteriologist for the County Health Department, testified that the contents of the paper sack weighed "a total of 27.4 grams." [3] Consequently, the very weight of the sack alone negated any belief the officer

3. One gram equals 0.03527 oz. 27.4 grams is the equivalent of 0.966398 oz., or approximately one ounce weight.

might have had that the sack contained a weapon. Therefore, the question arises: "Did the officer exceed the bounds of his authorized search for weapons, when he examined the contents of the sack?" The answer must be "yes." From the moment the officer patted the sweater and sack and determined there was no weapon, his search became an exploratory search beyond proper limits.

From the officer's testimony it is clear that defendant's arrest did not concern contraband items; nor did the radio report include any such reference. The officer testified that the defendant did not have the appearance of being under the influence of any kind of intoxicants, and none were found on him when he was searched. The officer's testimony made it clear that the sweater and the brown paper sack were the only items on the front seat, which of course were in plain view. The officer patted the sweater and lifted up the paper sack, all within the authority of his right to search for weapons. But when he opened the paper sack and flashed his light inside the "27.4 gram" sack, it is obvious that the contents of the sack were not in plain view any more so than if the contents had been contained inside a suitcase, or an enclosed box. Consequently, the search and seizure in this case cannot be said to be incident to the arrest on the charge of hit and run; nor can it be said that the officer suspected the paper sack contained a weapon. The officer was not alone when defendant was arrested, and he was soon joined by another police car with two additional policemen. Consequently, there appears to be absent such special circumstances as ordinarily justifies an extended search of a vehicle in this type case.

In State v. Cuellar, 25 Conn.Sup. 229, 200 A.2d 729 (1964), on a charge for grand larceny the Connecticut Supreme Court allowed the defendant's motion to suppress and prohibited the introduction into evidence nine pairs of new women's ski pants, taken from a large zipper bag found protruding from under the front car seat, after defendant and others were stopped for a traffic violation. That court held: "Since the search of the contents of the closed bag and the subsequent search of the entire car were illegal, they were unreasonable and the evidence thus discovered and seized must be held inadmissible." at p. 731, 200 A.2d at p. 731.

It is clear, however, that the sack and the feel of match boxes inside the paper sack, would have likely provided sufficient probable cause to seek issuance of a search warrant. However, under the facts, there is nothing in the record to indicate that "exigent circumstances" existed to justify the broadened warrantless search and seizure conducted by the officer. We are therefore left to conclude that the search in this case, without a warrant, violated defendant's constitutional rights, as not being incident to the arrest, and without special or exigent circumstances existing to warrant the search and seizure conducted herein.

We are therefore of the opinion that defendant's motion to suppress the evidence should have been sustained; and therefore this conviction should be reversed and remanded.

It is therefore the order of this court that the conviction of Eddie Bird, in District Court of Tulsa County Case No. CRF–70–1434, shall be reversed and remanded.

And further, the Director of the State Department of Corrections and the Warden of the State Penitentiary are hereby directed to discharge defendant from further confinement in the State Penitentiary on his conviction in Case No. CRF–70–1434, in Tulsa County.

BLISS, P. J., dissents.

BUSSEY, J., concurs in result.