UNITED STATES of America, Plaintiff,

v.

Gary Norton HORTZE, Defendant.

UNITED STATES of America, Plaintiff,

v.

Arthur Felix HORTZE, Defendant.
Cr. Nos. 28272-SD, 28368-SD.

United States District Court
S. D. California, S. D.
Nov. 20, 1959.

Laughlin E. Waters, U. S. Atty., George W. Kell, Asst. U. S. Atty., Los Angeles, Cal., Elmer Enstrom, Jr., Asst. U. S. Atty., San Diego, Cal., for United States.

Richard E. Adams, Albert Tom, San Diego, Cal., for defendants.

914

WEINBERGER, District Judge.

The defendant Gary Norton Hortze is charged by Indictment with violation of United States Code, Title 21, Section 176a in that on or about March 4, 1959, in San Diego County, California he did knowingly and with intent to defraud the United States receive, conceal and facilitate the transportation and concealment of approximately eleven marihuana cigarettes which as he then and there well knew theretofore had been imported and brought into the United States contrary to law.

The defendant Arthur Felix Hortze is charged by Information under United States Code, Title 18, Section 5032, with the offense of juvenile delinquency, in that he among other things violated Section 176a in the manner set forth with respect to Gary Norton Hortze. A jury waiver was filed in the case as to Gary Norton Hortze and the two cases were on April 27, 1959, consolidated for Court trial. The defendants are on bond.

On July 8, 1959, the consolidated cases came on for trial and counsel for defendants for the first time in his opening statement raised the issue of an illegal search and seizure but did not at that stage of the trial, make a motion to suppress such evidence.

The trial proceeded, and Government Immigration and Customs officers were called by the plaintiff, gave testimony, and were cross-examined by counsel for the defendants. Exhibits consisting of a Salem cigarette package containing 11 marihuana cigarettes (Exhibit 2) and some "Milltown" tablets (Exhibit 3) were introduced into evidence without prejudice to the right of the defendants to urge a motion to suppress such articles.

At the close of the Government's evidence, defendants' counsel made an oral motion to suppress the tablets and marihuana on the ground that they were obtained through an illegal search and seizure. Both sides then rested. The defendants did not take the stand. The trial was continued, subject to the Court's ruling on the motion to suppress. Counsel were ordered to file briefs.

On September 14, 1959, at a further hearing, the Court pointed out to defendants that they had made no showing as to their right to urge the motion to suppress; the defendants were given permission to file a written motion, and counsel for the parties were ordered to present in affidavit form any evidence they wished considered in support of or in opposition to, said motion. Thereafter affidavits were filed on both sides, and upon the filing of the final brief, the motion was submitted, and the trial was continued.

The Government has objected that the motion was not timely, pointing out that an opportunity existed for making the motion between April 27, 1959, the date the case was set for trial and July 8, 1959, the date of trial.

The Government has also pointed out that one of the officers who participated in the search, Patrick O. Neal, had been transferred to duty in the State of Minnesota prior to the date of trial, and that the United States Attorney, not knowing that a motion to suppress would be urged, determined that the presence of said Neal at the trial would not be necessary. The Government has not stated what it would have offered by way of the testimony of said officer; no affidavit of such officer in opposition to the motion has been filed. Sufficient time has elapsed between continuances of the hearing on the motion and the trial for the Government to produce said officer if counsel had deemed his testimony important to the issues involved.

Counsel for the defendants, on September 21, 1959, filed his affidavit stating that he was retained by the defendants subsequent to their arraignment, and that when he interviewed the defendants he was unaware of any particular grounds for filing a motion to suppress; that both he and the defendants had knowledge that the government has "informers" who inform officers on duty at or near the border as to persons who are transporting narcotics from

Mexico into the United States; that because of this knowledge counsel and the defendants assumed the officials who made the search had probable cause for stopping and searching the automobile in which defendants were riding and which contained the articles sought to be suppressed. Counsel further stated that the defendants were of the opinion that the officers had a search warrant; that he had no opportunity to ascertain the correct information as to whether there was, in fact, a search warrant issued to search the automobile, and whether there was, in fact, an informer involved, until the date of the trial when the officers testified that they did not in fact have a search warrant, and did not have any advance information that the marihuana and "Milltown" tablets were in the automobile.

Rule 41(e) of the Federal Rules of Criminal Procedure, 18 U.S.C. recites:

"A person aggrieved by an unlawful search and seizure may move the district court for the district in which the property was seized for the return of the property and to suppress for use as evidence anything so obtained on the ground that (1) the property was illegally seized without warrant * * *. The judge shall receive evidence on any issue of fact necessary to the decision of the motion. If the motion is granted the property shall be restored unless otherwise subject to lawful detention and it shall not be admissible in evidence at any hearing or trial. The motion to suppress evidence may also be made in the district where the trial is to be had. The motion shall be made before trial or hearing unless opportunity therefor did not exist or the defendant was not aware of the grounds for the motion, but the court in its discretion may entertain the motion at the trial or hearing."

It is our view that a defendant is entitled to presume an officer of the Government is acting within his statutory authority until such defendant has reason to believe the contrary. We rule that defendants have overcome the objection that their motion was not timely, and that the Court should exercise its discretion to consider such motion.

A transcript of the testimony at the trial has not been provided, but the Court took detailed notes during the proceeding, and counsel for the parties do not appear to be in disagreement as to the testimony. Counsel for the defendants relies upon the testimony of Immigration Inspectors Joseph Bezart and Gordon G. Hanks, Jr., given at the trial for his showing of illegal search and seizure, and upon affidavits of the defendants to show they are persons aggrieved by the search and seizure.

Inspector Joseph Bezart testified that he was on duty on March 4, 1959 at about 7:30 o'clock p. m. at a check point 18 miles north of the City of Oceanside in San Diego County on the U. S. Highway 101, checking north bound traffic, looking for aliens.

The Government has suggested that we note judicially that this highway is a main thoroughfare between Mexico to the South and the United States, and runs directly from the port of entry at San Ysidro, California to the city of Los Angeles, California and other major California cities to the north, and at certain points is parallel to the external boundary of the United States at the Pacific Ocean. That at the check point mentioned, the highway is less than a mile from the ocean. The facts mentioned in this paragraph are judicially noted.

Inspector Bezart testified that it was his duty to look for aliens, and that he had seven years of experience with the immigration service.

That at the time and place stated, he looked into the automobiles of north bound traffic as they stopped but that most of the automobiles then continued north and perhaps four out of a hundred were pulled over to the side for further checking. That he observed a 1953 Mercury automobile approach from the south; that the driver of the auto-

mobile, later identified as Arthur Felix Hortze appeared nervous and that the passenger in the front seat, later identified as Gary Norton Hortze, appeared to be of Latin or Mexican descent. That he ordered the car pulled to the shoulder of the road, then continued to check oncoming traffic. That he may have asked the driver to open the trunk of his automobile, as such is his usual practice, but that he did not remember whether he made such a request, or whether the trunk was opened at that time.

Immigration Patrol Inspector Gordon G. Hanks, Jr. testified that he was on duty as an Immigration Inspector at the time and place testified to by Inspector Bezart and was engaged, with said latter inspector, in checking traffic north of Oceanside for possible illegally entered aliens; that he flashed a light in the rear window of the Mercury automobile as it was pulled over on the shoulder and approached it from the rear on the passenger side; that he noticed a shuffling in the front seat as if some one were hiding something. He asked if the occupants were United States citizens, to which they answered in the affirmative, and then received the information that they had been in Ensenada, B. C. Mexico. Inspector Hanks stated he then asked Gary Norton Hortze to step from the automobile, and as he did so, Inspector Hanks observed a package labeled Salem cigarettes wedged between the right side of the front seat and the rim of the seat. That he picked it up and laid on the top of the front seat; looked under the passenger side of the front seat with the aid of the flashlight, then proceeded around the car to the driver's side of the seat. That he saw Inspector Neal flash his light on the back of the seat, that the latter showed Hanks the cigarette package, and that Neal opened the package and stated the contents appeared to be marihuana. That Neal then asked Gary where he bought the marihuana and Gary stated in Ensenada, from a cab driver, for $2.

That both officers are also customs inspectors, and have authority to make arrests for customs violations, and that they placed the defendants under arrest.

On cross-examination, Inspector Hanks testified that defendant Gary had no foreign accent, was of fair complexion and had dark brown hair. The Inspector stated he had no report or information in advance concerning the automobile which would have caused him to stop it.

Inspector Hanks further testified on cross-examination that the package was not sealed when he picked it up and laid it on the back of the seat, and that he did not know what was in the package at that time.

■ The defendants have no standing to make a motion to suppress evidence unless they are persons aggrieved by the search and seizure. Jeffers v. United States, 88 U.S.App.D.C. 58, 187 F.2d 498, affirmed 342 U.S. 48, 72 S.Ct. 93, 96 L.Ed. 59.

Defendant Gary Norton Hortze filed his affidavit on July 16, 1959 stating that the tablets and the Salem cigarette package taken from the automobile belonged to him and his brother Arthur jointly, and that the articles were taken from the brothers without their consent.

Defendant Arthur Hortze filed his affidavit on September 21, 1959 stating that he was and is the owner of the automobile searched; that the articles seized were purchased by him and given to his brother, and that both he and his brother had joint control, ownership and possession of the articles seized, and that the search and seizure was without his consent.

■ The Government has not sought to controvert the asserted ownership on the part of the defendants of the seized articles, and it is our view that the defendants have established their right to urge the motion. The contraband nature of the articles does not prevent a claim of ownership for the purposes of a motion to suppress. Trupiano v. United States, 334 U.S. 699, 710, 68 S.Ct. 1229, 92 L.Ed. 1663.

■ We are now brought to the point where we must decide upon the legality of the search under the Fourth Amendment prohibiting both unreasonable searches and unreasonable seizures. The protection of this amendment extends to the "effects" as well as the persons and houses of the people.

The Government, in its brief, has quoted Section 1357(a) of Title 8 U.S. C.A., which provides in part:

"(a) Any officer or employee of the Service authorized under regulations prescribed by the Attorney General shall have power without warrant—

"(1) to interrogate any alien or person believed to be an alien as to his right to be or to remain in the United States;

\*　\*　\*　\*　\*　\*

"(3) within a reasonable distance from any external boundary of the United States, to board and search for aliens any vessel within the territorial waters of the United States and any railway car, aircraft, conveyance, or vehicle, and within a distance of twenty-five miles from any such external boundary to have access to private lands, but not dwellings, for the purpose of patrolling the border to prevent the illegal entry of aliens into the United States."

The Government urges that the examination of defendants and the motor vehicle under Section 1357 of Title 8 U.S.C.A. was conducted in a lawful manner; that the officers had power, without a warrant, to search the motor vehicle for aliens at the time and place the search was conducted. Government counsel further urges that if, in the course of a bona fide search of a vehicle for aliens, officers of the Immigration and Naturalization Service discover that a crime is being committed they may arrest the persons involved and seize the instruments of such crime, and cites Ramirez v. United States, 5 Cir., 263 F. 2d 385.

■ We have noted here that the officers participating in the search were on duty in a dual capacity, as Immigration Officers, and as Custom Officers. They had the right, under the statute, to search the car *for aliens*. The question which confronts the Court is, were the marihuana and the tablets discovered in a bona fide search *for aliens* by Immigration Officers or were they discovered in an illegal search by Customs Officers?

A bona fide search for aliens, as we view it, involves looking in places where an alien might be concealed. This Court has had occasion, previously, to comment upon searches for aliens in a portion of an automobile where an alien could not possibly be concealed, such as a glove compartment, but we have not heretofore been confronted with the problem of passing upon the legality of such a search.

When Inspector Bezart picked up the Salem cigarette package wedged between the seats and placed it on top of the front seat, it is obvious that he did not believe that the package concealed an alien; and when Inspector Hanks opened the Salem cigarette package, he did not expect to find an alien.

The Government's brief asserts that the fact the Inspectors knew the defendants had come from Ensenada, the fact that the driver appeared nervous, and the fact that the Salem cigarette package was in sight when the light was flashed in the car gave the officers reasonable cause to believe that a customs violation had occurred, and that this reasonable cause arose during the course of their exercise of the right to search the vehicle for aliens. We do not agree with this premise.

We can envision cases where immigration officers searching for aliens come across evidence which gives them probable cause to believe there is a customs violation; for instance, if the beam of the flashlight discloses an open package in which marihuana, recognizable as such, is seen; or, where an immigration officer, upon opening a trunk where an alien might be concealed, smells an odor

which, as a customs officer, he recognizes as that of marihuana. None of these or similar circumstances were present in the instant case.

This question would not have arisen had the marihuana and tablets been discovered at the border port of entry where the officers have carte blanche to search for evidence of customs violations. It is unfortunate that offenders such as these defendants can use the cloak of our Constitution to assist them in evading the consequences of their deliberate actions. On the other hand, we feel that absent a search warrant or probable cause, individuals ought not be delayed in their travels along the boundaries of our country, nor their effects disturbed, to an extent not necessary for the conduct of a bona fide search for aliens under Section 1357 of Title 8 U.S.C.A. Carroll v. United States, 267 U.S. 132, 153–154, 45 S.Ct. 280, 69 L.Ed. 543. Brinegar v. United States, 338 U.S. 160, 176, 177, 69 S.Ct. 1302, 93 L.Ed. 1879.

The motion to suppress is granted as to each defendant.