**UNITED STATES of America**

v.

**Ernest Joseph BOSTIC, Jr.**

Cr. No. 22381.

United States District Court
E. D. Pennsylvania.

March 3, 1966.

John R. Sutton, Asst. U. S. Atty., Philadelphia, Pa., for plaintiff.

Samuel Dashiell, Philadelphia, Pa., for defendant.

JOHN W. LORD, Jr., District Judge.

The defendant stands charged in a two-count indictment with violating the provisions of 18 U.S.C.A. § 2113. Specifically, it is charged that he and a companion did unlawfully (1) conspire to rob a federally insured bank; and (2) entered said bank with the intention of committing larceny therein. The offense is alleged to have occurred in Philadelphia, Pennsylvania on or about December 2, 1965.

The matter is now before this Court pursuant to the provisions of Rule 41(e) of the Federal Rules of Criminal Procedure which permits

"[A] person aggrieved by an unlawful search and seizure * * * [to] * * * move * * * for the return of the property and to suppress for use as evidence anything so obtained * * *."

Under the provisions of Rule 41(e) a hearing was held and testimony was taken regarding the circumstances surrounding the alleged unlawful search and seizure. The evidence here sought to be suppressed is the .38 caliber snub nosed revolver found in the defendant's possession. The basis for the defendant's motion is that the search and seizure, carried out without a warrant, violated the defendant's Constitutional rights as guaranteed by the Fourth Amendment in that no probable cause existed for the search.

At the hearing the testimony revealed the following facts. On or about December 2, 1965 at 2:55 P.M., the defendant and a companion entered the West Philadelphia Branch of The Citizens Bank, located at 5513 Chester Avenue, Philadelphia, Pennsylvania. The parties wore similar outer garments, light colored trench coats and white caps, and each wore glasses. The defendant carried multi-colored shopping bags in his left hand, presumably the type frequently seen during the Christmas shopping season.

Upon entering the bank the defendant, without stopping at any of the utility desks provided for the customers' convenience, walked directly up to a teller's window and placed the bags on the counter. His companion remained at the door of the bank, looking outside from time to time. On or in front of the window that the defendant approached was a sign indicating that this particular window was closed, and directing customers to the next available teller. The young lady behind the window testified that when she saw the defendant she was balancing the day's receipts; that the defendant said nothing to her but that she felt something was amiss. She testified further that she left her position at the window to advise her immediate superior of her suspicions.

At this precise moment a police car pulled up in front of the bank, and an officer alighted from it. There is some controversy as to whether at this point the defendant's companion motioned to him to leave, or whether they simultaneously decided to remain in the bank no longer. In any event, it is undisputed that upon the arrival of the uniformed policeman the defendant and his companion left the bank hurriedly.

The entire incident was observed by two policemen inside the bank, referred to in the briefs and at the hearing as "stake out men." Their purpose in being there was apparently to provide added security in view of the increased banking activity generated by the approaching holiday season. One of these officers testified that as the defendant and his companion were leaving, the teller—from some unspecified distance—said something to him regarding the two men. He testified further that this, coupled with the above described circumstances, led him to believe that there had been an attempted robbery. The uniformed officer also testified that the two men looked suspicious as they were leaving the bank, but that he declined to stop them at that time.

Immediately upon entering the bank, the officer was told by the inside policemen to stop the defendant and his companion in that it was believed that they had attempted a robbery. He gave chase instantly and after some interlude not here relevant succeeded in stopping and searching them. It was at this time that the pistol now in question was discovered on the person of the defendant. Upon stopping the two men, the arresting officer observed a shotgun lying on the ground a number of feet distant from the men. They were at this time searched and taken into custody. There appears to be no objection with respect to incriminating statements or the appointment of counsel, and our inquiry is thus confined to determining whether probable cause existed for the search.

## DISCUSSION

There are very few questions regarding probable cause that are easy to resolve. Certainly, this was not one of them. After prolonged deliberation,

however, it is the judgment of this Court that the answer to the question of whether the arresting officer had probable cause turns on whether the inside officer himself could have lawfully made the search and arrest.

Assuming that the inside officer did have probable cause to make the search and arrest if he chose to do so, it is clear that the conduct of the arresting officer was well within the Constitutional limitations placed upon his office. He was told by fellow officers, whom he knew to be inside men, that there had been—or at least that it was thought that there had been—an attempted robbery. The exigencies of the situation did not afford him the luxury of prolonged reflection, and it was not his place to pause and ponder the question of whether his fellow officers had probable cause upon which to base their conclusion. He himself had observed the two men as they departed from the bank, and he testified that their demeanor invoked his suspicion. Moreover, when he returned to the street from the bank some anonymous passerby called his attention to the fact that the two men had fled.

■ Despite the revolutionary changes wrought to criminal procedure in recent years, flight or the attempt to flee remains as both a common sense and a legitimate legal ground for inferring guilt. See United States v. Heitner, 149 F.2d 105, 107 (2nd Cir. 1945) and the numerous citations contained therein. The suggestion in Wong Sun v. United States, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed. 2d 441 (1963) to the contrary is inapplicable inasmuch as the reason for not applying it there was that the officer had initially misrepresented his identity.

Here the information received from the inside men, coupled with his own observations of the defendant and his companion, leaves no doubt as to the validity of the search and arrest by the arresting officer. He did what was expected of him, and for this he is to be commended rather than condemned.

■ However, as noted previously, it is not the conduct of the arresting officer that most concerns this Court. Rather it is the conduct of the inside men; specifically, whether the events that took place in their presence were sufficient to provide them with probable cause to make and arrest and search. If the arresting officer had received his information from a member of the bank staff, or from any other lay person, there could be no doubt as to the validity of the ultimate arrest. Hearsay is a well established basis for probable cause when it is coupled with other circumstances which buttress its reliability. See Jones v. United States, 362 U.S. 257, 80 S.Ct. 725, 4 L.Ed.2d 697 (1960); Dumbra v. United States, 268 U.S. 435, 45 S.Ct. 546, 69 L.Ed. 1032 (1925); Carroll v. United States, 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543 (1925). However, the informant here was not a lay person. It was a law enforcement officer who had been placed inside the bank for the purpose of observing people and preventing a robbery.

■ In the opinion of this Court, there is a distinction between information received from a lay person and that acquired from a law enforcement officer. Where the information upon which probable cause is based is received from a lay person, the Court will seldom inquire into the reasonableness of the informer's conclusions. There are a number of reasons for this, not the least of which is the understandable desire for anonymity on the part of the informer.

■ Whatever the reason, however, it ought not to be adhered to slavishly, especially where, as here, it could be the basis for circumventing the Constitutional requirement of probable cause. The issue is thus reduced to this. Where the words of one officer form the basis of the arresting officer's probable cause, must the informing officer have probable cause upon which to base his statements? We believe that he must. Otherwise it would be a matter of doing indirectly what one could not do directly. If, for instance, one officer genuinely

believes that a particular person has committed a crime, but lacks probable cause for his belief, he cannot give probable cause to another officer's conduct merely by relating his suspicions to him.

If the inside officer's statement is removed, the arresting officer could not have had probable cause upon which to base his arrest. Indeed, he would never have even seen the two men after his initial encounter with them, since it was the inside officer's statement which acted as the catalyst and sent him on the chase. Where, as here, another officer's statements constitute a vital ingredient to the arresting officer's probable cause, the informing officer's basis for making them must be carefully scrutinized.

It will be recalled that the inside officer was not told by the teller or by anyone else that there had been a holdup attempt. Had he been so advised, there would, of course, be no question as to his probable cause for arresting and searching the two men himself, or for being assisted or having it done by another officer. Such a statement from a responsible source would alone be sufficient to support this action. However, we do not have that here. In this case the officer did not even hear the words of the teller, and even if he had it is doubtful that they *alone* would have been a sufficient basis for arresting or searching the men. The teller testified that she merely said that she believed "something was wrong," and even this was after the defendants had already departed.

This then leads us to an examination of the events which occurred inside the bank prior to the arrival of the arresting officer.

On the surface it appears entirely reasonable for one to enter a bank during the Christmas shopping season, laden with Christmas shopping bags, only to find that it is too crowded to remain until served. Even the fact of one's companion waiting by the door instead of at a less suspect location can be explained away by considering the privacy that one ordinarily desires in transacting his personal business. No words passed between the defendant and the teller. He did not demand any attention from her and it is arguable that he either failed to see the sign when he approached her counter or that he did so only to acquire information. All of these possibilities have been seriously considered by this Court in arriving at its decision. However, they must be recognized for what they are; namely, mere possibilities.

It is impossible to duplicate exactly the events which form the basis of probable cause. Especially is this so in a case such as this. Something is always lost in the translation; the expression on the parties' faces—fear, anxiety; their behavior in general. The cold record cannot reflect sense impressions: of furtive glances in the direction of the policemen; or of a suddenly quickened pace. Courts are not clairvoyant and there are few absolutes.

However, fortunately we are not entirely without guides. In the words of Mr. Justice Rutledge, "[T]he rule of probable cause is a practical, nontechnical conception affording the best compromise that has been found * * *." between preserving freedom from "rash and unreasonable interferences" and "enforcing the law in the community's protection." Brinegar v. United States, 338 U.S. 160, 176, 69 S.Ct. 1302, 93 L.Ed. 1879 (1949). "Because many situations which confront officers in the course of executing their duties are more or less ambiguous, room must be allowed for some mistakes on their part. But the mistakes must be those of reasonable men, acting on facts leading sensibly to their probability."

Without regard to the fruits of the search, we do not believe that such a mistake was made here. An officer need not await receipt of evidence which, by itself, would be competent evidence in a trial to determine the defendant's guilt or innocence. Such a contention " 'goes much too far in confusing and disregarding the difference between what is required to prove guilt in a criminal case and what is required to show probable cause for an arrest or search. * * *.' "

Mr. Justice Frankfurter in Jones v. United States, 362 U.S. 257, 270, 80 S.Ct. 725, 735, 4 L.Ed.2d 697 (1960) quoting from Brinegar v. United States, supra, 338 U.S. at 172, 69 S.Ct. 1302.

■ In the case before this Court two men walked into a bank. One remained by the door and, according to the testimony, continued to look from time to time outside the bank. The inside officer, who had been engaged in his work for two years and gave every appearance of being an expert in his field, testified that the pair looked suspicious to him even before they hurriedly left. When the police car pulled up in front of the bank the defendant's companion motioned for him to leave, and they both made a hasty exit. Simultaneous with or immediately after their departure the bank teller said something to the officer which, in the excitement of the moment, was not understood, but which unquestionably referred to the two men and further buttressed his conclusion that they had entered with the intention to rob the bank, a crime in itself. 18 U.S.C.A. § 2113(a).

The indictment in this case is for conspiracy to rob and for entering with the intention to rob a federally insured bank. Under the facts as related it is the judgment of this Court that the inside officer had probable cause to believe that the defendant and his companion had conspired to rob the bank and that they had entered for that purpose. He therefore could have arrested and searched them before they left the bank. The fact that their hasty departure made this impossible does not detract from his probable cause for believing that a crime had been committed, and thus his statement to the arresting officer was based on probable cause duly formed.

#### ORDER

And now, to wit, this 3rd day of March, A.D. 1966, for the reasons stated above, it is ordered that the defendant's motion for suppression of evidence be and the same is hereby denied.