**UNITED STATES of America**

v.

**Ethan G. WINER and Anthony F. Perillo.**

**Cr. No. 68–138.**

United States District Court

W. D. Texas,
San Antonio Division.

Jan. 21, 1969.

732

---

---

———◆———

Reese L. Harrison, Jr., Asst. U. S. Atty., San Antonio, Tex., for plaintiff.

Mitchell S. Rosenheim, San Antonio, Tex., for defendant Winer.

Anthony Nicholas, San Antonio, Tex., for defendant Perillo.

SPEARS, Chief Judge.

On July 19, 1968, Officers Appel and Gerusa of the United States Border Patrol were at a checkpoint located on Interstate Highway 35 about 2 miles south of Moore, Texas, routinely checking the nationality of occupants of automobiles

arriving from the direction of the Mexican border. At about dusk the automobile, an Opel Kadett, driven by defendant Winer and carrying defendant Perillo, arrived at the checkpoint and stopped. While the automobile was stopped, and after some preliminary investigation, it was searched and there was found therein a plastic package containing what appeared to be about 11 ounces of marihuana. As a result, defendants were subsequently charged with receiving, concealing, and facilitating the transportation and concealment of illegally imported marihuana in violation of 21 U.S.C. § 176a, and with failing to pay the transfer tax on marihuana in violation of 26 U.S.C. § 4744(a) (2). Defendants moved to suppress any evidence seized, asserting that the search and seizure were unreasonable and thus in violation of the fourth amendment. Believing that the search and seizure were unreasonable, this court holds that the contents of the plastic package are not admissible as evidence in this criminal prosecution.

From the testimony it appears that neither of the officers at the checkpoint had any advance information that the car transporting the defendants in this case was approaching the checkpoint, nor did they have any reason prior to the stopping of the defendants' automobile to suspect that it was carrying contraband. Rather, the suspicion which culminated in the search and seizure was aroused entirely by events occurring after the automobile had been stopped at the checkpoint. The search was conducted without a search warrant.

The events at the checkpoint may be briefly summarized. When the automobile transporting the defendants stopped, Officer Appel asked the defendants the routine question concerning their nationality. Both answered that they were citizens of the United States. Then Officer Appel asked them whether they were bringing anything with them from Mexico. Winer, seated in the driver's seat of the automobile, answered yes, while Perillo, occupying the other front seat, was shaking his head to indicate a negative answer. Officer Appel testified that he interpreted Perillo's action as an attempt to signal his companion that he should be answering in the negative. Upon receiving these suspiciously inconsistent responses to the question, Officer Appel ordered Winer to pull his automobile off the highway and to open the trunk. Then, without communicating to Officer Gerusa the particular reason for his ordering the automobile to be pulled off the highway, Officer Appel returned to the checkpoint and resumed his stopping of approaching automobiles.

As the defendants' automobile was pulled off the highway, Officer Gerusa approached it with the intention of searching for aliens. From the established practice at the checkpoint, Officer Gerusa knew by the fact that the automobile had been pulled off the road that his partner Officer Appel had determined that it should be searched for that purpose. However, he was not aware of any details of the conversation that prompted his partner to make that determination.

Approaching the automobile, Officer Gerusa saw Perillo in the right front seat of the automobile bending forward as if reaching for something on the floorboard. Proceeding to the rear of the automobile with Winer and looking into the trunk, he observed through the rear window of the automobile that Perillo remained in the same position, apparently working with something on the floor. Finding nothing suspicious in the trunk, Officer Gerusa then walked to the right door of the automobile and told Perillo to get out so that he could look under the seat. Upon reaching under the seat, the officer immediately discovered the plastic package that is the object of this motion to suppress.

Both the officers were employed by the Immigration and Naturalization Service. In that capacity they were authorized by statute "without warrant * * * [but] within a reasonable distance from any external boundary of the

United States, to board and search *for aliens* any * * * vehicle." 8 U.S.C. § 1357(a) (3) (1964) (emphasis added). By regulation, the statutory term "a reasonable distance" has been limited for ordinary circumstances to mean a distance not exceeding 100 air miles. 8 C.F.R. Ch. 1 Pt. 287.1(a) (2) (1968). The regulations also provide guidelines for the district directors of the Immigration and Naturalization Service to follow in establishing checkpoints a reasonable distance from the border and within the 100 air miles limit. See 8 C.F.R. Ch. 1 Pt. 287.1(b) (1968). However, it was never seriously argued in this case that the checkpoint was not established in compliance with the applicable regulations, or that it was not within the statutory "reasonable distance" from the border. See Fernandez v. United States, 321 F.2d 283, 286 (9th Cir. 1963). Consequently, the officers were authorized to stop the automobile transporting the defendants and, without a warrant, to conduct a search *for aliens*.

The search by Officer Gerusa of the trunk of the automobile was clearly within this authority, since the trunk is a logical place to look for aliens being illegally transported. However, it is neither reasonable nor realistic to say that when he looked under the seat of the small Opel Kadett automobile he was looking for aliens. See Contreras v. United States, 291 F.2d 63, 66 (9th Cir. 1961); United States v. Hortze, 179 F. Supp. 913, 917 (S.D.Cal.1959). Since it was the search under the seat that produced the contraband, the government may not rely on the statutory authority of 8 U.S.C. § 1357(a) (3) (1964) to establish that that portion of the search was reasonable.

In addition to their duties as officers of the Immigration and Naturalization Service, Officers Appel and Gerusa were authorized as customs agents to make investigations and arrests in connection with customs viola-

tions such as that charged against defendants in this case. However, since the search and seizure here were not in connection with a "border search",[1] in order to defeat the motion to suppress the government must establish that the search was based on probable cause. Carroll v. United States, 267 U.S. 132, 155–156, 45 S.Ct. 280, 69 L.Ed. 543 (1925). The test to be used in determining whether probable cause existed has always been that of whether the information known by the officer at the moment of the search and seizure would have been sufficient to cause a man of reasonable prudence and caution to believe that a crime probably had been committed.

The fourth amendment protects citizens against searches and seizures that are unreasonable. A search and seizure can hardly be evaluated in terms of reasonableness except by examining all the surrounding circumstances and considering the information available to and known by the person deciding that the event should take place. It follows that in order for a search and seizure to comply with constitutional requirements, the *decision* that the search is to take place—whether the person making the decision be a judicial officer passing on an application for a search warrant or an enforcement officer deciding to conduct a search without a warrant—must be a reasonable one.

In determining whether probable cause existed for Officer Gerusa's decision to search *under the seat* of the automobile, it is proper to consider only the information *he* had at the time of that decision and not any knowledge that his partner may have had, but which was not communicated to him. Cf. United States v. Bostic, 251 F.Supp. 306, 308–309 (E.D.Pa.1966). In other words, the constitutionality of a search and seizure depends, not on hindsight view of the circumstances as they are later learned to have existed, but rather on the rea-

---

1. Contreras v. United States, 291 F.2d 63, 65 (9th Cir. 1961); Cervantes v. United States, 263 F.2d 800, 803 n. 5 (9th Cir. 1959).

sonableness of the officer's decision to search, viewed in light of the total awareness *he* then had of the events which had taken place. What one officer may have known, but did not communicate to the second officer could hardly be used to support a finding that the second officer acted reasonably in searching without a warrant. Probable cause, therefore, might have been more easily found had the officer making the search under the seat of the automobile known about the conflicting answers defendants gave to the question concerning what they brought back from Mexico. But Officer Appel, who heard those answers and observed the occupants, was not the one who made the search and seizure, and he had not told Officer Gerusa about them prior to Gerusa's finding the plastic package. Consequently, this court bases its holding on the facts of which Officer Gerusa himself was aware at the time he made his decision, and will indicate no opinion in regard to a hypothetical situation in which the searching officer may have known of the conflicting answers.

▆▆▆▆ When the decision was made to search under the seat of defendants' automobile, Officer Gerusa was acting under, at most, the following information: (1) that Officer Appel had determined there was "something wrong" in the defendants' automobile indicating to him that it ought to be searched for aliens, and (2) that the passenger in the right front seat had bent over toward the floor board of the car and remained in that position both before and during the search of the trunk. The first piece of information referred to in (1) above is of little significance in considering whether or not Officer Gerusa had prob-

able cause to search under the seat of the automobile, since the primary purpose of the checkpoint was to discover aliens illegally brought into the country, there having been no showing that Gerusa had any reason to think his partner had suspected anything other than an immigration violation. With respect to (2) above, Officer Gerusa himself testified that he did not know what he was looking for—just anything that might be illegal—and that he was merely "curious" about why Perillo was bending over, admitting that Perillo might have been merely bending over to tie his shoe. Probable cause is more than a mere curiosity or suspicion,[2] and to be upheld a search must be more specifically directed than merely a general exploratory search for "anything illegal".[3] The fourth amendment's protection of innocent citizens against unreasonable searches and seizures would be meaningless if the search in this case were upheld.

In the words of the court in United States v. Hortze, 179 F.Supp. 913 (S.D. Cal.1959), "it is unfortunate that offenders such as these defendants can use the cloak of our Constitution to assist them in evading the consequences of their deliberate actions. On the other hand, we feel that absent a search warrant or probable cause, individuals ought not be delayed in their travels along the boundaries of our country, nor their effects disturbed, to an extent not necessary for the conduct of a bona fide search for aliens under Section 1357 of Title 8, U.S.C.A." Id. at 918.

An order sustaining defendants' motion to suppress has already been entered.

2. E. g., Staples v. United States, 320 F. 2d 817, 820 (5th Cir. 1963); Cervantes v. United States, 263 F.2d 800, 803 (9th Cir. 1959).

3. United States v. Tate, 209 F.Supp. 762, 765 (D.Del.1962); see, e. g., United States v. Rabinowitz, 339 U.S. 56, 62–63, 70

S.Ct. 430, 94 L.Ed. 653 (1950); Brinegar v. United States, 338 U.S. 160, 177, 69 S.Ct. 1302, 93 L.Ed. 1879 (1949); Harris v. United States, 331 U.S. 145, 153, 67 S.Ct. 1098, 91 L.Ed. 1399 (1947); Carroll v. United States, 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543 (1925).