Monroe **BANKS**

v.

**Vernon L. PEPERSACK, Warden, Maryland State Penitentiary.**

Civ. No. 15370.

United States District Court
D. Maryland.

June 30, 1965.

J. Joel Woodey, court-appointed, Baltimore, Md., for petitioner.

Thomas B. Finan, Atty. Gen., Maryland, and David T. Mason, Asst. Atty. Gen., Baltimore, Md., for respondent.

NORTHROP, District Judge.

Petitioner, Banks, was convicted of possessing narcotics and, under Maryland's third offender law, was sentenced to 15 years by the Criminal Court of Baltimore, Judge Carter presiding. He now applies for a writ of habeas corpus, having exhausted all the remedies afforded by the state. A hearing has been held by this court and the evidence admitted here, as well as at the original trial and post conviction hearing, has been carefully considered.

The petitioner makes only two contentions in his petition. They are:

1. That he was arrested illegally; and

2. That the narcotics and narcotics paraphernalia proffered by the state at the trial was the result of an illegal search and seizure.

### Illegal Arrest

Because of information furnished them by a proven reliable informant the narcotics squad of the Baltimore City Police had under surveillance for about one week the premises at 1519 North Broadway, specifically the third floor apartment. On the 18th of January, 1961, at about 5:45 p. m., they sought entrance to the building. They did not have a warrant. As the officers approached the door, they glanced through a glass panel and saw the petitioner inside. They claim that he saw them also, but he denies this. Whether he did or not need not be determined, but it is a matter of fact that he went from the door into the adjoining parlor.

After knocking on the door for a period of seconds, the police were confronted by an elderly man, James Keene, who was either renting or buying the house at that time. What transpired next is also in doubt. The police say that Mr. Keene opened the door and, although they admit he said nothing, "welcomed them in." Banks testified that he heard some arguing and Mr. Keene, although he has since passed away, stated in an affidavit that he at first pushed

against the door to keep the police out and later, after they flashed their badges, decided to let them in for fear of being arrested himself. At any rate, they entered the house, some heading for the third floor and one, Sgt. Wineke, for the living room, where Banks was located. There were a number of people in the room along with Banks. Officer Wineke testified that the petitioner was seated in an overstuffed armchair when he came into the room. This Banks emphatically denies. The officer also testified that he went directly to Banks, whom he knew to be a narcotics user, and made him stand while he searched his person, and found nothing. At this point Sgt. Wineke placed Banks under arrest. After coming upon another suspect and going through the same procedure with him, Sgt. Wineke ushered both of the alleged offenders upstairs to the third floor where the other officers had made arrests and seized certain narcotics and narcotics paraphernalia. After a short period of time the officers brought their charges back down to the living room and seated them on the floor.

The officers conducted a search of the parlor and found 13 capsules of heroin in a chewing gum wrapper under the pillow of the chair Sgt. Wineke claims Banks was sitting upon. During the time the officers were upstairs the chair was not guarded and it is undisputed that there were numerous individuals in the room during this time. (Sgt. Wine-ke estimated the number of people in the house to be about 13).

The police also admit that even though they had reliable information concerning the operations on the third floor, they had none concerning Monroe Banks and were in fact "surprised" to find him there. It is also uncontradicted that when Banks was seen by the police, and he allegedly saw them, he made no effort to run or hide but instead was found in the living room talking with the others present.

I think the testimony clearly shows:

1. That the police had no warrant for Monroe Banks.

2. Entry was gained by showing a badge, no oral permission or consent otherwise being evident.

3. Banks made no effort to run or hide himself. There was no conduct that, in itself, would justify an arrest.

4. He was arrested at the time the officer accosted him in the chair and made him stand while he searched him. Sgt. Wineke has testified on three occasions that this is when the arrest took place.[1]

5. No evidence was found on Banks' person.

6. Banks was an invitee on the premises and was there lawfully.

7. The officers had no information concerning Banks' and were in fact surprised to find him there.

[1] The State has raised a question as to the time when the arrest occurred. It contends that the actual arrest of Banks did not take place until after the heroin in the chair was found. This, of course, would give the officer a much stronger case of probable cause upon which to base the arrest. However, this contention is rebutted by the testimony of Officer Wineke, who on three separate occasions testified that he considered Banks under arrest when he first approached and searched him. This construction is supported by a recent Maryland case, McChan v. State, 238 Md. 149, 207 A.2d 632 (1965). There the Court of Appeals touched upon this very subject saying:

"As that case points out there is a detention only when there is a touching by the arrestor or when the arrestee is told that he is under arrest and submits. When there is no touching, the intention of the arrestor and the understanding of the arrestee are determinative * * *." 238 Md. at 157, 207 A. 2d at 638.

In light of the evidence on the subject I think it is clear that under Maryland law Banks was arrested when searched by Sgt. Wineke and I am also certain that both Banks and the officer considered the arrest to have taken place at that time. In fact, Sgt. Wineke later testified that he would have arrested Banks whether any narcotics were found or not.

8. The primary reason for the arrest was that Banks was a known narcotics addict and was found on the premises during the raid.

 In deciding whether or not the arrest was valid the law of Maryland is applied, in so far as it does not conflict with settled constitutional standards. In Maryland an arrest may be made if:

A. There is a warrant for the arrested person.

B. A misdemeanor is committed in the presence of an officer.

C. The officer has a reasonable belief that a felony has been or is being committed by the arrested person.

It is important to note that a reasonable belief or probable cause alone is not sufficient where the arrested person is suspected of committing a misdemeanor out of the presence of the officer. Stanley v. State, 230 Md. 188, 186 A.2d 478 (1962).

 In this case there was neither probable cause nor reasonable grounds for the arrest of Monroe Banks. Even had there been probable cause to believe Banks guilty of committing a misdemeanor this would not be enough under Maryland law to validate the arrest. I do not find, either, that Banks' actions gave the officers any reason to make the arrest. See Wong Sun v. U. S., 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963); Henry v. U. S., 361 U.S. 98, 80 S.Ct. 168, 4 L.Ed.2d 134 (1959); Johnson v. U. S., 333 U.S. 10, 68 S.Ct. 367, 92 L.Ed. 436 (1948). There seemed to be a belief by both the police officers and the defendant that a warrant was not required for the arrest of a known addict at the time. The source of this confusion was the Bouse Act, Article 35 § 5 Maryland Code (1957), which will be fully explained later in this opinion. Suffice it to say now that a warrant was required in this situation as in any other. I find that there was no warrant for Banks' arrest, nor was there probable cause. The arrest was unlawful.

## Illegal Search

On this point the same facts that were considered above are again pertinent here with some expansion and illumination. The sequence of events that are important to the search was as follows:

1. Banks was placed under arrest and his person searched as soon as the officer entered the room where he was sitting (or standing as he claims).

2. The officer, after failing to find anything on Banks, took him upstairs to the third floor.

3. While the officers were on the third floor there were a number of people of all ages in the room where the narcotics, subsequently tied in with Banks, was found.

4. The police searched the upstairs apartment and then brought the accused persons downstairs to the parlor.

5. The officers searched the parlor and found the narcotics in the large chair they claim Banks was sitting in.

 Before delving deeper into the legality of the search I think it best to dispose of two arguments made by the state. First the State claims that Banks, as an invitee and as one who disclaimed ownership of any of the evidence seized, has no standing to object to its introduction into evidence. To answer this argument I refer the State to Jones v. United States, 362 U.S. 257, 80 S.Ct. 725, 4 L.Ed.2d 697 (1960), where these very contentions were raised by the government in a closely analogous situation. The Supreme Court rejected them saying at page 263, 80 S.Ct. at page 732:

"The same element in this prosecution which has caused a dilemma, i. e., that possession both convicts and confers standing, eliminates any necessity for a preliminary showing of an interest in the premises searched or the property seized, which ordinarily is required when standing is challenged."

and at page 264, 80 S.Ct. at page 733:

" * * * where the indictment itself charges possession [as it did

here] the defendant in a very real sense is revealed as a 'person aggrieved by unlawful search and seizure' * * * " as required by Rule 41(e) F.R.Cr.P.

The Court had this to say on the necessity of an interest in the premises being searched at page 267, 80 S.Ct. at page 734:

"* * * anyone legitimately on premises where a search occurs may challenge its legality * * * when its fruits are proposed to be used against him."

From the foregoing I think it is evident that Banks can object to the search that was made.

The State also argues that the narcotics and narcotics paraphernalia were never formally admitted into evidence. A close reading of the trial transcript would tend to support this position although it is not clear by any means. Whether or not they were formally introduced is not the important thing, however. If they were in any way considered by the trier of fact (Judge Carter in this case), then there is a distinct possibility that they entered into his decision and therefore would have been prejudicial to the petitioner. We have no way of determining whether or not Judge Carter did in fact consider this evidence, but I believe it highly likely that he did. In any case it is not for this court to speculate on such matters when the possibility exists. Barbee v. Warden, Maryland Penitentiary, 4 Cir., 331 F.2d 842 (1964), Fahy v. State of Connecticut, 375 U.S. 85, 84 S.Ct. 229, 11 L.Ed.2d 171 (1963). I must assume that the evidence was considered by Judge Carter and therefore find that it was instrumental in the conviction of the defendant whether formally admitted or not.

But still the question remains; was the search an illegal one. I think it is undisputed that a search is legal if:

1. A search warrant is obtained describing the place to be searched and the objects to be seized.

2. The search is incidental to a lawful arrest.

3. The officer had probable cause to believe that a felony had been or was being committed and the search is incidental to the pursuit of the offender.

4. Permission to search is obtained from the possessor of the property, limited to that under his control.

In this case it is clear that the officer had no warrant so that possibility no longer exists. Since the arrest of Banks had been found to be unlawful, the search cannot be lawful as incidental to a lawful arrest. This leaves two possibilities that will be discussed.

As mentioned previously, Maryland at one time had a statute that in an indirect manner condoned illegal searches and seizures when the fruits of them were used in cases involving narcotics misdemeanors. This was such a case. (The statute has since been superseded by Mapp v. Ohio, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961)). The police had information that the third floor of the premises was being used by addicts as a "shooting gallery" and a meeting place for those involved. None of their information, as far as is known, concerned any acts that are considered to be felonies by the law of Maryland. This would explain why the police, with the information on hand for at least a week, did not seek a search warrant. At that time it was not required in this situation. Mapp, supra, applied the exclusionary rule to state prosecutions of all criminal cases, be they felonies or misdemeanors, and therefore made the exception relating to narcotics misdemeanors invalid.

However, the State argues that Mapp does not apply in this instance since the retroactivity of the decision has been limited by the Linkletter case decided recently. Linkletter v. Walker, 85 S.Ct. 1731 decided June 7, 1965. This

contention is erroneous. The Court decided that Mapp was applicable to all decisions not "final" when the holding was handed down. In footnote 5 to the opinion in Linkletter the Court gives its definition of final as where, " * * * the judgment of conviction was rendered, the availability of appeal exhausted, and the time for petition for certiorari had elapsed before our decision in Mapp v. Ohio." Here Banks had noted his appeal but had not yet been heard on it. In fact, his attorney argued Mapp at his appeal, although he did so in vain. Banks v. State, 228 Md. 130, 132, 179 A.2d 126 (1962). Banks clearly falls within the application of Mapp v. Ohio.

█ The State makes one last argument in an effort to validate the search. It claims that even though the officers did not have a warrant or probable cause to believe that there was a felony being committed they did have permission to search the house. They find this "consent" in the subsequent acquiescence of Mr. Keene, who after they had knocked upon the door and flashed their badges, let them in. The officers admit no words were spoken. I do not believe that a reasonable person would find consent from these facts and I do not believe that there was in fact any given. See Amos v. United States, 255 U.S. 313, 41 S.Ct. 266, 65 L.Ed. 654 (1921). This argument fails also.

█ As a result of the foregoing discussion I think it is evident that this search was unreasonable. Even if it could be found that the officers had probable cause there was no set of circumstances present that would exempt them from the procurement of a warrant. Johnson v. U. S., 333 U.S. 10, 68 S.Ct. 367 (1948). As Chief Judge Thomsen pointed out in his recent opinion concerning the "Veney" raids in Baltimore, Lankford v. Schmidt, D.C.Md., 240 F. Supp. 550 (1965):

> "Entry into a dwelling without probable cause and without consent must be severely condemned * * " (at p. 557).

The search was unreasonable and illegal and the fruits of it that were introduced into evidence should have been excluded. The writ will be granted.

It follows that Banks must be released unless the State elects to retry him and does so within a reasonable time. Counsel should prepare an appropriate order.

The court expresses its appreciation to Mr. Woodey for his conscientious and able presentation of his client's case.