Daniel GRUNDSTROM, Petitioner,

v.

Dr. George J. BETO, Director, Texas Department of Corrections, Respondent.

Civ. A. No. CA 3–1767.

United States District Court
N. D. Texas,
Dallas Division.

Aug. 4, 1967.

Reconsideration Denied Sept. 18, 1967.

Joel Jay Finer, Associate Professor of Law, Austin, Tex.; Warren Burnett, Odessa, Tex. (On Motion for Reconsideration only), for petitioner.

Crawford C. Martin, Atty. Gen. of Texas, Dallas, Tex.; Gilbert Pena, Asst. Atty. Gen., Austin, Tex., William F. Alexander, Asst. Dist. Atty., Dallas County, Dallas, Tex. (On Motion for Reconsideration, only), for respondent.

## OPINION

WILLIAM M. TAYLOR, Jr., District Judge.

Petitioner is confined in the Texas penitentiary serving a 25-year sentence for the offense of armed robbery. By agreement of opposing counsel his application for a writ of habeas corpus was submitted on briefs. Because of the disposition herein made, it will only be necessary to consider Grundstrom's contention that the fruits of an unreasonable search were introduced in evidence against him at his state trial.

The record of the trial in the state court shows that on August 24, 1961, at approximately 3:30 A.M., the night clerk in a motel in Dallas, Texas, was robbed by a lone bandit. Shortly thereafter, and some four miles from the scene of this robbery, a Dallas police officer stopped an orange and white 1953 Mercury, having noticed that the car had a loud muffler, a violation of a Dallas city ordinance. Petitioner was a passenger in this car and his companion, the driver, failed to produce a driver's license at the officer's request. The officer thereupon instructed both men to get out of the car and seat themselves in the police car in which was also seated another police officer. Petitioner and his companion complied with this order and the officer then proceeded to search the Mercury. He tore out the kickboard beneath the glove compartment and found a paper sack containing money in bills and change, a handkerchief, and a gun, all lodged between the body and the inside of the car. When the officer confronted petitioner with the fruits of the search, he remarked, "this other boy didn't have anything to do with it." Petitioner was subsequently identified in a lineup by two motel employees as the person who committed the robbery.

█ The Fourth Amendment requires that no search shall be conducted in the absence of a search warrant. There are exceptions to the amendment and when the State relies upon an exception the burden is upon it to show the need for making use thereof. United States v. Jeffers, 342 U.S. 48, 72 S. Ct. 93, 96 L.Ed. 59 (1951). Respondent contends that the search is justified on two grounds. First, the petitioner's companion, who was driving the car, was validly arrested for committing a traffic offense and the search was therefore incident to a lawful arrest. Secondly, that the officer had reasonable grounds to believe that the car in which petitioner was a passenger was the get-a-way car in which the robber fled and he therefore had probable cause to search the car.

██ The primary test to be applied in determining whether the search of a motor vehicle is valid is that of reasonableness. Preston v. United States, 376 U.S. 364, 84 S.Ct. 881, 11 L.Ed.2d 777 (1964). What is reasonable and what is unreasonable must necessarily be determined from the particular factual situation in which the issue arises.

█ The right to search a person incident to a lawful arrest has evolved as an exception to the requirement of the Fourth Amendment that no search shall be conducted in the absence of a warrant based upon probable cause. See Weeks v. United States, 232 U.S. 383, 34 S.Ct. 341, 58 L.Ed. 652 (1914); Carroll v. United States, 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543 (1925). Once a valid arrest is shown the police may invoke the exception.

■ Limitations on the exception have developed as to the character of the articles sought for so that only (1) fruits of or implements used to commit the crime for which the accused was arrested, (2) items under the immediate control of the accused which it is unlawful for him to possess, (3) visible instruments of a crime at the scene of the arrest, (4) weapons by which the escape of the accused might be affected, and (5) mere evidence of the crime for which he was arrested, are subject to seizure. Weeks v. United States; Carroll v. United States, supra; United States v. Lefkowitz, 285 U.S. 452, 52 S.Ct. 420, 76 L.Ed. 877 (1932); Harris v. United States, 331 U.S. 145, 67 S.Ct. 1098, 91 L.Ed. 1399 (1947); Warden, Maryland Penitentiary v. Hayden, 387 U.S. 294, 87 S.Ct. 1642, 18 L.Ed.2d 782 (1967).

■ The permissible scope of the search is the place where the arrest is made. Agnello v. United States, 269 U.S. 20, 46 S.Ct. 4, 70 L.Ed. 145 (1925); Marron v. United States, 275 U.S. 192, 48 S.Ct. 74, 72 L.Ed. 231 (1927).

■ A search which is not restricted to one of the above items or which exceeds the permissible scope of the search is exploratory and unreasonable. Go-Bart Importing Company v. United States, 282 U.S. 344, 51 S.Ct. 153, 75 L.Ed. 374 (1931).

If, under the facts of the instant case, "the objects sought for and those actually discovered were [not] properly subject to seizure," Harris v. United States, 331 U.S. 145 at 154, 67 S.Ct. 1098 at 1103, 91 L.Ed. 1399 at 1407, under the foregoing limitations, then no reason for the search existed and it is relegated to the classification of general and exploratory. Go-Bart Importing Co. v. United States, supra.

a. *The Instrumentalities and Means by which the Crime was Committed.*

■ The crime committed which gave rise to the search was a traffic offense, operating a motor vehicle with a loud muffler. The means by which the offense was committed was the vehicle itself and, more specifically, the muffler. The officer most certainly could not have disassembled the inside of the car looking for the muffler. United States v. Tate, 209 F.Supp. 762 (D.Del.1962). The search of the interior of a motor vehicle bears no relation to seeking the means by which a traffic offense was committed. Distinguishable is the case in which the operator of a motor vehicle who has committed a traffic offense appears to be under the influence of an intoxicant wherein it is arguable that the officer has reasonable grounds for searching the car for liquor or drugs. See Richardson v. State, 163 Tex.Cr.R. 585, 294 S.W.2d 844 (1956); Tabb v. State, 154 Tex.Cr.R. 613, 229 S.W.2d 628 (1950); Thompson v. State, Tex.Cr.App., 398 S.W.2d 942 (1966); Anderson v. State, Tex.Cr.App., 391 S.W.2d 54 (1966); Ybarra v. State, 160 Tex.Cr.R. 487, 272 S.W.2d 374 (1954); Church v. State, 206 Tenn. 336, 333 S.W.2d 799 (1960); Stevens v. State, 274 P.2d 402 (Okla.Crim.1954). These searches, however, find their justification in the fact that they were incident to an offense for which the officer had probable cause to arrest, i. e., driving under the influence of drugs or driving while intoxicated, offenses for which there exists means or instruments of commission.

■ Similarly, the search cannot be justified as an effort to locate the fruits of the offense for there are no fruits of driving with loud mufflers.

b. *Property by which the Escape of the Person may be effected.*

After stopping the Mercury, the officer did not search petitioner and his companion for weapons but instructed them to go sit in the police car which they did. It was at this time that the search took place.

■ To permit all searches incidental to an arrest to be justified on the theory that the officer is searching for weapons would be to allow wholesale fishing expeditions whenever a legal arrest is made. United States v. Tate, supra. Contrariwise, it must be recognized

that policemen spend much of their time dealing with dangerous criminals, some of which are well dressed and peaceful appearing as the majority of law-abiding citizens, and a search for weapons is necessary in many instances. But just when the search becomes necessary must be tested by the standard of reasonableness. If, from the totality of the circumstances presented to the officer he has reasonable grounds to believe that he is in danger of bodily harm or injury or that the person he encounters is armed or is dangerous, justification for a search for weapons exists. See United States v. Washington, 249 F.Supp. 40 (N.D. Ill.1965); People v. Thomas, 31 Ill.2d 212, 201 N.E.2d 413, cert. den. 380 U.S. 936, 85 S.Ct. 948, 13 L.Ed.2d 824 (1965); Brinegar v. State, 97 Okl.Cr. 299, 262 P.2d 464 (1953); State v. Scanlon, 84 N.J.Super. 427, 202 A.2d 448 (1964); Elliot v. State, 173 Tenn. 203, 116 S.W.2d 1009 (1938). Where, however, as in this case, the occupants of the car are seated in the rear of a police car with an officer present in the car with them and the police have made no effort to search their persons for weapons, and neither of the officers has reason to believe that the individuals are armed, or dangerous, and neither has done anything from which the officers could believe their own persons were in danger, a search of the car for weapons by which the petitioner and his companion might seek to escape is unreasonable. See State v. Michaels, 60 Wash.2d 638, 374 P.2d 989 (1962); State v. Scanlon, Brinegar v. State, supra.

### c. *Property the Possession of which is a Crime.*

 A search for contraband is reasonable when conducted incident to a traffic violation only when the arresting officer observes some occurrence other than the traffic offense itself which reasonably leads the officer to believe that the motorist possesses contraband. See State v. Krogness, 238 Or. 135, 388 P.2d 120, cert. den. 377 U.S. 992, 84 S.Ct. 1919, 12 L.Ed.2d 1045 (1964) (large rifle seen through window giving rise to belief that contraband game animals were being transported); People v. Blodgett, 46 Cal.2d 114, 293 P.2d 57 (1956) (suspicious actions by defendants); State v. Brindley, 25 Conn.Supp. 216, 200 A.2d 247 (1963) (burglar tools in open view); People v. Gonzales, 356 Mich. 247, 97 N.W.2d 16 (1959) (contraband weapon in open view); Goodwin v. United States, 121 U.S.App.D.C. 9, 347 F.2d 793 (1965), cert. den. 382 U.S. 855, 86 S.Ct. 107, 15 L.Ed.2d 93 (weapon in open view). In the absence of some fact from which the officer can reasonably draw the belief that the motorist possesses contraband, a search for such articles is unreasonable. People v. Molarius, 146 Cal.App.2d 129, 303 P.2d 350 (1956); People v. Erickson, 31 Ill.2d 230, 201 N.E.2d 422 (1964); Sellars v. State, 237 Md. 58, 205 A.2d 296 (1964); People v. Carr, 370 Mich. 251, 121 N.W.2d 449 (1963). No facts from which the officer in the present case could have derived such a belief having been present, the search cannot be justified as relating to contraband.

 Nor can the validity of the search be predicated upon a quest for mere evidence. There is no evidence of a traffic offense subject to seizure.

Respondent relies upon Carroll v. United States, supra, in urging that a different and more relaxed standard is required in the search of an automobile than in the search of a house. In this the Respondent misreads *Carroll.* That case deals solely with the question of whether an exception to the procurement of a warrant requirement is to be accorded to the search of a movable object, such as an automobile. *Carroll* in no way relaxes the standard of probable cause required to search with or without a warrant. Nor do the facts in that case support Respondent's contention that the search was properly incidental to the traffic arrest. The officers in *Carroll* had probable cause from the outset to search for contraband and the motor vehicle in that case was stopped solely for the purpose of seizing the items which formed the basis of the subsequent prosecution.

■ Because a traffic offense within itself is not attended by any of the items for which police may constitutionally search, it follows that in the absence of some other justifying circumstance, a search cannot justifiably extend to the interior of the motor vehicle.[1]

### d. *Probable Cause.*

Respondent contends, however, that the officer in the case at bar, as the officers in Carroll v. United States, had probable cause to search the Mercury based on the information that had been aired over the police radio. If this were true, the officer would have been acting within a constitutionally recognized exception to the Fourth Amendment. Carroll v. United States, supra, and the search would have been lawful providing the officer had such facts within his knowledge as would constitute probable cause for the issuance of a search warrant by a magistrate. Johnson v. United States, 333 U.S. 10, 68 S.Ct. 367, 92 L.Ed. 436 (1948).

■ Respondent's contention as to such probable cause is not supported by the record in this case. The Statement of Facts of petitioner's trial is void of testimony on the part of the officer who conducted the search which would indicate that he had any idea whatsoever that one or both of the occupants of the Mercury were the robbery suspects. Indeed, all the record shows on direct examination of the officer by the district attorney is that he had heard a radio dispatch. The record does not even reflect that the officer knew a robbery had been committed. On cross examination, the officer admitted that he was on the look-

out for a red and white Ford. Neither of the motel employees who were robbed by the bandit testified that they saw the car in which he fled. The record is wholly silent as to any circumstantial evidence of why the officer was looking for a red and white 1956 Ford. Nor was the caution exercised one would expect from a police officer about to approach an armed robbery suspect. The searching officer's partner remained in the squad car while he approached the driver of the Mercury. When the driver failed to produce an operator's license the officer instructed both men to seat themselves in the back of the squad car which they did without any form of resistance or suspicion. The officer testified that at this time his partner began to check on the driver to see if he had a suspended driver's license. Within moments the officer conducted a search of the car in the course of which he uncovered the money, gun, and handkerchief.

Even had it been shown that the arresting officer had knowledge that a robbery had been committed, it is difficult to conceive how a magistrate could have found probable cause from the facts within the knowledge of the officer. The car stopped was a completely different model and color from the one for which he was on the outlook. This record is devoid of any positive fact upon which a magistrate could have inferred probable cause.

The conclusion that the officer did not have probable cause to search the car in which Petitioner was a passenger is further supported by the manner in which

---

1. In support of its contention that a search of a motor vehicle incident to a traffic arrest is reasonable, Respondent has cited to the Court Lane v. State, Tex.Cr.App., (1967), in which the Texas Court of Criminal Appeals held that such a search was valid. In that case, as in this one, the officer did not search the occupant of the vehicle prior to the time he searched the vehicle itself. The only portion of that opinion to which I need make reference is the dissent of Judge Morrison, wherein he stated:

"In simple traffic violations there are no fruits of the crime, and a search can be justified only as a means of affording protection to the arresting officer. To say that the officer who turns his back on the driver whom he has arrested, while he first searches the driver's automobile is conducting a reasonable search incident to the arrest and not conducting an exploratory search staggers the credulity of anyone who pauses to examine the reasoning."

the officer conducted his confrontation with the occupants of the car. Apparently he entertained no suspicions of danger since he took none of the defensive measures one would expect of an officer approaching a suspected robber, such as searching the person of the suspect or calling upon his partner for assistance in so searching.[2]

The fact that the officer's search uncovered the instrumentalities and fruits of a crime does not render this exploratory search valid. Byars v. United States, 273 U.S. 28, 47 S.Ct. 248, 71 L.Ed. 520 (1927).

Respondent contends that the Petitioner does not have standing to complain of the illegal search and seizure because he was only an occupant in the car. In support of this proposition, reliance is placed on Wong Sun v. United States, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963), wherein evidence unlawfully obtained from one defendant was admitted into evidence against another defendant. The *Wong Sun* court observed, however, that "[t]he seizure of this heroin *invaded no right of privacy of the person or premises*" of the defendant against whom the narcotics were admitted. 371 U.S. at 492, 83 S.Ct. at 419, 9 L.Ed.2d at 458. In a footnote to this quote the Court noted that the case before it was not like Jones v. United States, 362 U.S. 257, 80 S.Ct. 725, 4 L.Ed.2d 697 (1960), wherein the person challenging the seizure of evidence was lawfully on the premises at the time of the search.

Jones abolished the distinctions in standing to complain of an illegal seizure of "licensee," "invitee," and "guest," with Mr. Justice Frankfurter stating,

"No just interest of the Government in the effective enforcement of the

criminal law will be hampered by recognizing that anyone legitimately on premises where a search occurs may challenge its legality by way of motion to suppress, when its fruits are proposed to be used against him." 362 U.S. 267, 80 S.Ct. 734, 4 L.Ed.2d 706. Implicit in *Jones* is the recognition that the constitutional standing is satisfied when the defendant shows himself to have been the person against whom the search was directed. This requirement is satisfied at such time as the defendant alleges that he was legitimately on the premises when the search took place and the fruits thereof are intended to be used against him in a criminal prosecution.

There can be no doubt that an automobile has the same status as a house within the meaning of the Fourth Amendment. Cotton v. United States, 371 F.2d 385 (9 Cir. 1967); Preston v. United States, 376 U.S. 364, 84 S.Ct. 881, 11 L.Ed.2d 777 (1964); Carroll v. United States, 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed.2d 543 (1925). The courts have been consistent in holding, since Jones, that legitimate presence on the premises of the search is sufficient to confer standing to object. United States v. Beigel, 370 F.2d 751 (2 Cir., 1967); Gonzales v. Beto, 266 F.Supp. 751 (W.D.Tex.1967); Banks v. Pepersack, 244 F.Supp. 675 (D.Md.1965); United States v. Blank, 251 F.Supp. 166 (N.D.Ohio, 1966); U. S. ex rel. Eastman v. Fay, 225 F.Supp. 677 (S.D.N.Y.1963), rev. on other grounds, 333 F.2d 28 (2 Cir., 1964).

At petitioner's trial his attorney objected to the introduction of the evidence on the basis that petitioner "was in the care and custody of the car." This allegation, together with the evidence of his presence in the car, gave petitioner standing to object.[3] The State

---

2. See Footnote 1, supra.

3. Some doubt exists as to whether the "personal interest" requirement of Jones v. United States, 362 U.S. 257, 80 S.Ct. 725, 4 L.Ed.2d 697 (1960) and Wong Sun v. United States, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963) is still the ra-

tionale behind the exclusionary rule. In Linkletter v. Walker, 381 U.S. 618, 85 S. Ct. 1731, 14 L.Ed.2d 601 (1965) and Tehan v. United States ex rel. Shott, 382 U. S. 406, 86 S.Ct. 459, 15 L.Ed.2d 453, reh den, 383 U.S. 931, 86 S.Ct. 925, 15 L. Ed.2d 850 (1966), the Supreme Court

could have defeased petitioner of this standing by showing him to be illegally in the car, but no such evidence was offered.

Respondent nevertheless argues that because the search was directed at the driver of the car petitioner has no standing. From what has already been said, it is clear that the only requisites for standing are legitimate presence by an individual and the attempted use against him of the evidence wrongfully obtained. Jones v. United States, supra. Furthermore, the Court having found the search to be exploratory, it cannot be said that it was directed at anyone in particular but rather against whomever the fruits thereof tended to incriminate.

■ It is argued by Respondent that *Jones* was but a judicial interpretation of Federal Rule of Criminal Procedure 41(e) and hence the Fourteenth Amendment has no application on the State of Texas. This position is untenable. Rule 41(e):

> " * * * applies the general principle that a party will not be heard to claim a constitutional protection unless he 'belongs to the class for whose sake the constitutional protection is given.' " 362 U.S. 261, 80 S.Ct. 731, 4 L.Ed.2d 704.

The *Jones* court determined who shall be entitled to the Fourth Amendment's protection and the rendition of Mapp v. Ohio, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961) one year thereafter made that determination binding upon the states.

Respondent's last contention is that petitioner waived his right to object to the admission of the fruits of the search in the state trial court. In support of this proposition reliance is placed upon the decision of the Texas Court of Criminal Appeals in petitioner's case, Grundstrom v. State, 363 S.W.2d 945 (Tex.Cr.

strongly. intimated that the true basis for the exclusionary rule is one of "general deterrence." In *Linkletter*, the Court stated:

> "Mapp had as its prime purpose the enforcement of the Fourth Amendment through the inclusion of the exclusionary rule within its rights. This, it was found, was the only effective deterrent to lawless police action. Indeed all of the cases since Wolf requiring the exclusion of illegal evidence have been based on the necessity for an effective deterrent to illegal police action * * * In rejecting the Wolf doctrine as to the exclusionary rule the purpose was to deter the lawless action of the police and to effectively enforce the Fourth Amendment." 381 U.S. at 636, 637, 85 S.Ct. at 1741, 14 L.Ed.2d at 613.

*Linkletter* was shrouded in the retroactivity issue and only a careful reading thereof reveals the apparent essence of the decision. To a dissenting Justice in *Linkletter* it was unmistakable what the majority had done:

> "The inference I gather from these repeated statements [quoted, supra] is that the rule is not a right or privilege accorded to defendants charged with crime but is a sort of punishment against officers in order to keep them from depriving people of their consti-

tutional rights. In passing I would say that if that is the sole purpose, reason, object, and effect of the rule, the Court's action in adopting it sounds more like law-making than construing the Constitution. * * * Quite aside from that aspect, however, the undoubted implication of today's opinion that the rule is not a safeguard for defendants but is a mere punishing rod to be applied to law enforcement officers and is a rather startling departure from many past opinions, and even from *Mapp* itself."

Mr. Justice Black, dissenting, 381 U.S. at 649, 85 S.Ct. at 1748, 14 L.Ed.2d at 620. In *Tehan*, the Court reaffirmed its pronouncement in *Linkletter* that "the prime purpose of the rule of Mapp v.. Ohio * * * was 'to deter the lawless action of the police and to effectively enforce the Fourth Amendment.' " 382 U.S. at 413, 86 S.Ct. at 463, 15 L.Ed.2d at 458. Based on *Linkletter* and *Tehan* a strong argument has been made that the general deterrent rationale now prevails as the basis for the exclusionary rule. See 34 Univ.Chi.Law Rev. 342 (1967). No court has adopted this reasoning, however, and Wong Sun v. United States, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963) is an apparent rejection of this view.

App.1963), in which that court held that petitioner waived any error in the admission of the items seized in the search because he failed to object to their admission or move the court to strike the testimony of the police officer relating to the items.

An examination of the record reflects that the district attorney questioned the officer concerning the items and had him identify them as the property he seized in the search of the Mercury. At the close of the direct examination of the officer the district attorney stated, "We offer, Your Honor, States Exhibits 1 and 2, being the pistol and the nine rounds of ammunition into evidence." Whereupon defense counsel stated to the court, "Your Honor, I would like to have the witness on voir dire and have the jury excused, please." The jury was retired and following the voir dire examination of the officer, petitioner's counsel objected to the introduction of Exhibits 1 and 2, at which time the following took place:

> "MR. RYAN: Your Honor, we are going to have to object to the admission of this evidence, on the ground that it's a violation of the defendant's constitutional rights in that he was in the care, and custody of the car; and even if the other man was arrested, he was not arrested. And when they searched the car, the search was illegal and the seizure was illegal and cannot be admissible in evidence.
>
> THE COURT: The Court is going to overrule your objection.

MR. RYAN: The Court will note our exception.

THE COURT: Yes, sir. Bring the jury back.

MR. MILNER: I have made an offer of that pistol and those nine rounds of ammunition in evidence.

MR. RYAN: We objected to it, Your Honor, but you overruled the objection so it's automatically in evidence.

THE COURT: Well, yes, subject to your exception.

MR. RYAN: We object to the admission on the grounds as stated before.

THE COURT: All right. *The Court will admit it.*"

A state court's finding of waiver of a federal right does not bar an independent determination of the question by a federal court, for waiver of such a right is a federal question. Fay v. Noia, 372 U.S. 391, 83 S.Ct. 822, 9 L.Ed.2d 837 (1963). A determination of the waiver issue is governed by the standard announced in Johnson v. Zerbst, 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938), whether there was "an intentional relinquishment or abandonment of a known right or privilege." The foregoing record clearly shows there was no such waiver on petitioner's part.

It follows that because petitioner's rights under the Fourth Amendment were violated by the introduction into evidence of the fruits of the search of the automobile,[4] the judgment of conviction must be vacated.

4. For those cases in which the search of an automobile incidental to an arrest for a traffic violation has been held unreasonable as bearing no relation to the offense, see, People v. Molarius, 146 Cal. App.2d 129, 303 P.2d 350 (1956); Collins v. State, 65 So.2d 61 (Fla., 1953); Burley v. State, 59 So.2d 744 (Fla., 1952); People v. Mayo, 19 Ill.2d 136, 166 N.E. 2d 440 (1960); Lane v. Commonwealth, 386 S.W.2d 743 (Ky., 1964); People v. Lee, 371 Mich. 563, 124 N.W.2d 736 (1963); Holland v. State, 93 Okl.Cr. 180, 226 P.2d 448 (1951); Banker v. State, 61 Okl.Cr. 169, 66 P.2d 955 (1937); Johnson v. State, 92 Okl.Cr. 63, 220 P. 2d 469 (1950); State v. Michaels, 60 Wash.2d 638, 374 P.2d 989 (1962); State v. Riggins, 64 Wash.2d 881, 395 P.2d 85 (1964); State v. Cuellar, 25 Conn.Supp. 229, 200 A.2d 729 (1964); Coston v. State, 252 Miss. 257, 172 So.2d 764 (1965); Elliott v. State, 173 Tenn. 203, 116 S.W.2d 1009 (1938); Courington v. State, 74 So.2d 652 (Fla., 1954); People v. Beaman, 44 Misc.2d 336, 253 N.Y.S. 2d 674 (1964); McCurdy v. State, 42 Ala.App. 646, 176 So.2d 53 (1965); People v. Lewis, 34 Ill.2d 211, 215 N.E.2d 283 (1966); People v. Erickson, 31 Ill.

The writ of habeas corpus will be granted. Petitioner is ordered discharged, subject to the right of the State of Texas to retry him within a reasonable time.

## ON STATE'S MOTION FOR RECONSIDERATION

By agreement of the Respondent Dr. Beto, represented by the Attorney General of Texas, and the Petitioner Grundstrom, represented by Professor Joel Jay Finer, of the University of Texas Law School under the Appellate Defender Program of that Law School, this case was submitted to the court on the record made of the trial in state district court and on the briefs of the parties. Evidentiary hearing was therefore unnecessary, the only issue presented being the legal question of the validity of the search based upon the facts as developed at the state trial.

After the case was decided by this court, an order was entered vacating the judgment of conviction of the state district trial court and staying the release of Grundstrom for 60 days in order to give the state an opportunity to retry the case against him. Nothing stated herein in any wise affects that stay order. The District Attorney of Dallas County filed a motion for reconsideration in behalf of Respondent Beto.[5]

■ At the hearing of such motion for reconsideration, Mr. Alexander, the District Attorney's representative, offered in evidence tape recordings and transcriptions of the Dallas Police Department's radio dispatches which were claimed to be relevant to the question of probable cause for the search and seizure. Also offered in evidence was a city ordinance,[6] as well as testimony of the officers in regard to statements made by petitioner at the time of the arrest. This offer of evidence was objected to on the ground that the state was undertaking to repudiate its agreement with reference to the determination of this case and on the further ground that the question actually before this court was the correctness and legality of Grundstrom's trial in the state court, as shown by the record of that proceeding, and that this court should not determine the issues on evidence that could have been offered by the state but was not so offered, such evidence being immaterial to a determination of the case by this court. During the argument on this objection, the District Attorney's representative contended that the state court erred in excluding the state's offer of the police dispatches and *seeks a retrial in this Federal district court* on the basis of what the trial court erred in excluding. In further argument on this point, the District Attorney's representative stated if he had to decide this case on the record of the trial in the state court alone, then he would have reached the same conclusion that was reached by this court. Without regard to the assertion of repudiation of an agreement by state officials, the objection to the tape recordings, transcriptions thereof, city ordinance, and statements by Grund-

---

2d 230, 201 N.E.2d 422 (1964); Sellars v. State, 237 Md. 58, 205 A.2d 296 (1964); People v. Carr, 370 Mich. 251, 121 N.W.2d 449 (1963); State v. Scanlon, 84 N.J.Super. 427, 202 A.2d 448 (1964).

5. The state's motion for reconsideration is herein treated as a motion for new trial pursuant to 28 U.S.C.A., Rule 59(b), Hunter v. Thomas, 8 Cir., 1949, 173 F.2d 810. The basis of the District Attorney's contention in now entering the case as attorney for respondent is that the Attorney General's office should not have submitted this case on the record, but should have offered the evidence which the District Attorney now seeks to present to this court.

6. Section 37–5, Revised Code of Civil and Criminal Ordinances, City of Dallas, enacted pursuant to Article 14.03, Texas Code of Criminal Procedure, which state statute provides:

The municipal authorities of towns and cities may establish rules authorizing the arrest, without warrant, of persons found in suspicious places, and under circumstances which reasonably show that such persons have been guilty of some felony or breach of the peace, or threaten, or are about to commit some offense against the laws.

strom, was sustained because this court was obliged to decide the issue presented on the record of what was actually shown in state court and not on what *could* have been shown. Fay v. Noia, 1963, 372 U.S. 391, 83 S.Ct. 822, 9 L.Ed.2d 837; Jones v. Cunningham, 1963, 371 U.S. 236, 83 S.Ct. 373, 9 L.Ed.2d 285; Smith v. Bennett, 1961, 365 U.S. 708, 81 S.Ct. 895, 6 L.Ed. 2d 39.

Request was made that the opinion or portions thereof be withdrawn. Such request is denied. Nothing contained in the opinion in this case would suppress evidence of probable cause for the search and seizure, such as police radio dispatches, ordinances, or the like, at the retrial of Grundstrom. There is no more reason to fear the opinion rendered in this case than there is to fear the Constitution of the United States.

Respondent's Motion for Reconsideration is overruled.